## GEORGE D. WILLIAMSON

*v.*

## JOHN HOGAN.

1. PLEADING AT LAW—*demurrer.* The principle is well established, that judgment will be rendered against him who commits the first error in pleading.

2. SAME—*concerning a plea under the act of Feb.* 16, 1857, *relative to the liability of vessels—pleader must bring himself strictly within its terms.* Under the act of Feb. 16, 1857, relative to the liability of vessels, for debts contracted on account thereof, a pleader, in order to avail himself of the statute, must show himself clearly within its terms and spirit, as nothing will be presumed in that direction in his favor.

3. STATUTES—*act of 1857—relative to vessels—in proceedings against vessels—giving bond—discharges lien.* In a proceeding against a vessel, under the act of Feb. 16, 1857, the giving of the bond, as provided for by section five of that act, effects a clear discharge of the lien first obtained under the statute.

4. CONFLICT OF LAWS—*concerning jurisdiction of State courts over contracts not maritime.* The act of the general assembly of Illinois, passed Feb. 16, 1857, relative to the liability of vessels for debts contracted on account thereof, is not repugnant to the 9th section of the act of congress of Sept. 24th, 1789, conferring exclusive jurisdiction upon the district courts of the United States, in all admiralty causes arising on the navigable waters of the United States.

5. CONTRACTS—*what will not be considered maritime.* Contracts made with the proper person for furnishing supplies to boats and vessels, and performed at the home port, are not maritime contracts, and for a breach of such contracts, actions can be maintained in the manner provided by the act of 1857.

APPEAL from the Court of Common Pleas of the city of Cairo; the Hon. JOHN H. MULKEY, Judge, presiding.

The opinion states the case.

Messrs. ALLEN & WEBB, and Mr. D. T. LINEGAR, for the appellant.

Messrs. O'MELVENY & HOUCK, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin for the steamboat Cumberland, brought to the Court of Common Pleas of the city of Cairo, by George D. Williamson against John Hogan.

To the declaration, the defendant pleaded, in substance, that on the 20th day of September, 1866, an attachment warrant came to his hands as city marshal, issued by the Clerk of the Court of Common Pleas of the city of Cairo, bearing the above date, in a suit wherein Samuel Wilson was the plaintiff, and the steamer "Cumberland" was the defendant, and then and there, at the city of Cairo, navigating the Ohio river in this State, and wholly owned by a corporation of this State, and of four hundred tons burden, for the sum of four hundred and eighty-two dollars and sixty-nine cents, for supplies furnished the boat at her home port in Cairo, by Wilson, whereby he, as city marshal, was commanded to seize the said boat, if to be found in the city, or so much of her tackle, apparel and furniture, as should be of value sufficient to pay this debt and costs, and the same so seized to hold, or so to proceed, that the same be liable to further proceedings thereupon, at the October term of the Court of Common Pleas, to be held on the first Monday of October, 1866, to answer to said Wilson in a plea of assumpsit, etc. That by virtue of this writ, he did, as city marshal, on the 20th day of September, 1866, at the city of Cairo, take the goods and chattels in the declaration mentioned, and seized the same by virtue of that writ, as the property of the River Transportation Company, a corporation under the laws of this State. He further alleged in his plea, that on the same day, in pursuance of the statute, he released the same from his custody to the owners thereof, on the execution and delivery to him of a bond, conditioned for its return, to answer whatever judgment might be rendered in the suit against the boat, or have double the sum for which the warrant was issued.

64—46TH ILL.

The plea then alleges that the cause was continued at the October term, but that at the January term, 1867, such proceedings were had that Wilson recovered a judgment against the boat for four hundred and eighty-seven dollars sixty-four cents and costs, and that in default of payment thereof, the property attached be sold under a special execution. The plea then alleges, that on the 25th of January, 1867, a special execution was duly issued, and to him delivered on that day, commanding him to sell the property so seized without delay, and that by virtue of this writ, he did, at the city of Cairo, on the 20th day of March, 1867, levy upon and take the property in the declaration described, as the property attached and seized on the attachment warrant issued on September 20th, 1866, and as the property of the River Transportation Company, averring that the property was the property of that company at the date of the seizure under the attachment warrant, and there and then subject to such seizure and attachment, the vessel being at her home port, etc.

To this plea, the plaintiff obtained leave to reply double, and in his first replication he sets out proceedings in the Circuit Court of Alexander county, at the October term, commenced by warrant, at the suit of plaintiff, and others, under which judgments were rendered against this steamboat, her furniture and apparel, and that afterwards, special writs of execution, issued upon these judgments, against the boat, her apparel and furniture, directed to the sheriff of the county to execute, and that the sheriff, on the fifteenth day of January, 1867, by virtue of those writs, after giving due notice, did, according to law, for the purpose of satisfying the executions, expose the boat, her apparel and furniture, to public sale, and that, at such sale, the plaintiff bid for her, her apparel and furniture, sixteen hundred dollars, which, being the highest bid, the boat was struck off and delivered to him by the sheriff, and a bill of sale was made and delivered to him by the sheriff, on the eighteenth of that month, and that he

remained in peaceable possession of the boat, and her furniture, until the taking and detention by defendant.

The second replication sets out proceedings by warrant, at the November term, 1866, of the same Circuit Court, under which judgment was rendered against the River Transportation Company, in favor of Fowler, Lee & Co., for the sum of ten thousand dollars; that a special writ of execution was issued on this judgment, directed to the sheriff to execute, who levied on this boat, her apparel and furniture, she being then and there the property of the River Transportation Company, and the sheriff did, then and there, expose her to public sale, after advertising according to law, and at the sale, on the fifth of January, 1867, the plaintiff bid for the boat, her apparel and furniture, the sum of $4,200, at which sum she was struck off to the plaintiff, and delivered to him by the sheriff, who made a regular bill of sale of her to him, and that he remained in the actual peaceable possession of the boat, her apparel and furniture, until the taking and detention by the defendant.

To each of these replications the defendant demurred generally. Judgment upon the demurrer was given for the defendant, and a writ of *retorno habendo* awarded.

To reverse this judgment, the plaintiff brings the record here by appeal, and assigns as error this decision upon the demurrer.

Appellant makes the point, that the demurrer should have been sustained to the plea, if the replications were defective, as the plea is also defective. The principle is well established, that judgment should be given against the party committing the first fault in pleading. Is the plea defective? By turning to the statute, under which the proceedings set up in the plea, were had, act of Feb. 16, 1857, it appears, by section 1, that steamboats, and other water craft, navigating the rivers within, or bordering upon this State, are made liable for debts contracted on account thereof, by the master, owner,

steward, consignee, or agent, for materials, supplies, or labor, in building, repairing, furnishing or equipping the same, or due for wharfage.   Scates' Comp., 789.

It is no where averred in this plea of what character these supplies were, or that they were furnished by contract with the owner or master, steward, consignee or agent.   The statute makes provision for materials or supplies, or labor in building, repairing, furnishing or equipping the vessel.   We cannot intend the supplies were of this description, or that they were furnished on contract, and with the persons named in the act.   If they were not, then the boat was not liable.   To avail of the statute, the pleader must bring himself within its terms and spirit.   This, the plea does not do, and is therefore defective, and the demurrer should have been sustained to it. We might here leave the cause by a reversal of the judgment for the insufficiency of the plea, but as the cause will have to be remanded, it is necessary to decide other questions which have been made and argued, and which are of an important character, preliminary to which, however, the replications must be noticed.

Were they so defective as to be obnoxious to a general demurrer?   The first replication does not aver at what time the October term of the circuit court was held, nor does that or the second replication specify the time when the writs of execution were issued, and when, or in what county, they were levied.   Enough, however, is averred, from which fair inference may be drawn, that the term was in October, 1866, and that the executions were issued and levied before the fifteenth and fifth of January, 1867, respectively, at which last named day, the sale, under the Fowler, Lee & Co. judgment is alleged to have been made, and the former, the day on which the sale on the plaintiff's judgment, with the others named, was made.

The replications are substantially good, and do not depart from the declaration.   They are in the nature of a confession and

avoidance. They substantially say, true it is, that you did levy on and seize this boat, by the warrant in your hands, but you admit, she was released to the owner on a bond being executed, by the terms of which, the boat was to be forthcoming to answer any judgment that might be obtained, or double the sum for which the warrant issued ; that while the boat was so in the possession of its owner, the sheriff levied the execution in my favor on the boat, it was exposed to public sale, and struck off to me, as the highest bidder, and a bill of sale executed to me, by the sheriff, and I was in the peaceable possession of the boat when you took her out of my possession.

These replications present the question as to the effect of this release of the boat to the owner, on a bond being executed. By the seizure under the warrant, a lien was obtained ; that is certain, and if it was not released, the boat became subject to sale on the execution which issued on the judgment obtained by Wilson, admitting his case was within the act of 1867.

The fifth section of this act provides in terms, that the owner, master, etc., or other agent, may discharge the property seized, upon entering into bond to the officer, with two or more sureties, in double the amount of the demand sworn to be due by the plaintiff, conditioned that the property, or double the amount sworn to be due, shall be forthcoming to answer the judgment under the seizure.

Here is a clear discharge of the lien effected by the bond, but if the property is not discharged by giving a bond, the sixth section provides, that after judgment, if the property is still held, (the word "and" is certainly a misprint for "if",) it may be sold upon execution to satisfy the judgment. Ib. 790.

In this contingency only, can the property be sold on the judgment, and the plea avers it was not still held, but had been released to the owner.

This being the condition of the boat, there can be no question, it became liable to the plaintiff's execution, and to the

execution issued on the judgment of Fowler, Lee & Co., which were issued and levied while the boat was in the possession of her owners, and before the subsequent seizure by the defendant.

It is unnecessary to cite any authority to sustain the position, that the lien first obtained was discharged, other than the fifth section of the statute, which expressly provides for such discharge, as the citation we have made, clearly shows.

The demurrer to the replications should have been overruled, or carried back to the plea.

But there is another, and it is the principal, question made by the appellant on this record, not considering that the point he makes is like a two-edged sword, cutting both ways. He insists that the law of 1857, giving jurisdiction to the courts of the State, in cases of this character, and by a proceeding *in rem,* is contrary to the constitutional legislation of Congress, giving to the District Courts of the United States exclusive jurisdiction over them. The plaintiff's claim to the boat is based on the same sort of proceeding, and if the defendant's claim is baseless, by reason thereof, so must be that of the plaintiff.

We have considered this subject, and will state briefly our conclusions, premising, that we have discovered nothing in the constitution of the United States, in the distribution of judicial power, placing admiralty and maritime cases exclusively within the jurisdiction of the courts of the United States. The provision is, the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction; not that the jurisdiction shall be exclusive. So, in the same article, this power extends to controversies between citizens of different States. Yet, who can doubt that a citizen of Virginia, if found within the jurisdiction of our courts, is amenable to its process. The judiciary act of September 24, 1789, might, with the same propriety, have declared the controversies between citizens of different States

exclusively within the jurisdiction of the District Courts, but it does not.

But to the question. The statute under which these proceedings were had, are common to all the States bordering on navigable waters, or having such waters within their respective jurisdictions. With variation in details, the object of the statutes of all the States is identical, and that is, to give a summary remedy by a proceeding *in rem* against boats and other water craft employed upon such waters, the owners of which are not generally known, or within the reach of personal service of process. Such laws, although they have been in operation and enforced without question, for a long series of years, have been, quite recently, decided by the highest judicial tribunal of this country, to be in conflict with the constitutional legislation of Congress on the same subject. Though the question had been distinctly presented to that court in 1825, in the case of the *Thomas Jefferson*, 10 Wheat., 428, and jurisdiction in admiralty claimed in the case, which was for seaman's wages, on a steamboat navigating the waters of the Ohio, Mississippi and Missouri rivers, it was solemnly decided that no act of Congress had conferred such jurisdiction in cases arising above the ebb and flow of the tide.

The same ruling was made in the case of the *Steamboat Orleans* v. *Phoebus*, 11 Peters, 175. These cases, and some others of like nature, were decided prior to February 26, 1845, on which day an act was passed by the congress, by which it was provided, that the District Courts of the United States should have and exercise the same jurisdiction in matters of contract and tort arising in, upon, or concerning steamboats, or other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in navigation between ports and places in different States and territories, upon the lakes and navigable waters connecting the lakes, as was then possessed and exercised by

those courts in cases of like steamboats and other vessels employed in navigation and commerce upon the high seas and tide waters within the admiralty and maritime jurisdiction of the United States.

The first case which arose under this act, was the case of the *Genesee Chief* v. *Fitzhugh et al.*, 12 Howard, 457. This vessel had been libelled for damages, arising from a collision on Lake Ontario, with the schooner Cuba. The court held, in an able argument by Chief Justice TANEY, that the English rule obtained, because all her navigable waters were tide waters, and where there could be no navigation there was no use for an admiralty jurisdiction. In this country many of our rivers could be navigated as successfully and profitably for a thousand miles above tide water, as they could below, and adopting as the test of admiralty jurisdiction in this country, an artificial rule, which was founded on a reason in England that did not exist here, would be an absurdity. The true rule in both countries was, the navigable capacity of the stream. The decisions in the cases of the *Thomas Jefferson* and the *Orleans*, *supra*, were there fully examined and overruled.

Subsequently, in 1857, the case of *Jackson et al.* v. *The Steamboat Magnolia*, 20 Howard, 296, which was a case of collision on the Alabama river, two hundred miles above tide water, between the steamboat Magnolia and the steamboat Wetumpka, came up for decision, and it was then held that District Courts exercised this jurisdiction over fresh water rivers navigable from the sea, by virtue of the judiciary act of September 24, 1789, and not as conferred by the act of 1845, which extends their jurisdiction to the great lakes and waters not navigable from the sea. The principles of the case of the *Gennesee Chief* were again fully considered and reaffirmed.

The State courts, however, continued to exercise jurisdiction and adjudicate causes, which, in the nature of their subject matter, were identical with causes acknowledged to be of admiralty and maritime cognizance, and administered remedies

differing in no important particular from those always considered as peculiar to admiralty courts, and this under statutes of which ours is a fair sample, and not under any claim of a general common law power in their courts to such jurisdiction.

Such causes were of frequent occurrence in all the State courts, the question being made in none of them, of a want of jurisdiction, until in 1863, the case of *Hammons* v. *The Steamship Moses Taylor*, arose in the State of California. In that State there is a statute making all steamboats and other vessels liable, among other things, for non-performance or mal-performance of any contract for the transportation of persons or property made by their respective owners, masters, agents or consignees, and that such a cause of action, with the others specified, should constitute a lien upon the particular steamboat or vessel. The act also provided that an action for a demand arising upon any one of the grounds specified, might be brought directly against such steamboat or boat, naming the boat in the complaint; that the summons might be served on the master, mate, or any one having charge of the boat, and that the boat might be attached as security for the satisfaction of the demand, and if the attachment was not discharged and a judgment was recovered by the plaintiff, the boat might be sold by the sheriff, and the proceeds applied to the payment of the judgment.

Hammons, in October, 1863, made a contract with Roberts, the owner of the steamship Moses Taylor, employed in carrying passengers and freight between Panama and San Francisco, to carry him, in consideration of one hundred dollars, as a steerage passenger, with reasonable dispatch, and furnish him provisions, water, berth, etc., on the voyage.

For an alleged breach of this contract, Hammons brought an action before a justice of the peace of San Francisco, by a proceeding against the vessel under the act cited, the justice

65—46TH ILL.

having jurisdiction of the amount claimed, that not exceed-
ing the sum of two hundred dollars.

The agent of the ship filed an answer, denying the alle-
gations of the complaint, and also the jurisdiction of
the court, claiming that the action, being against the ship,
was one of which a court of admiralty had exclusive jurisdic-
tion, as the vessel was used exclusively in navigating the high
seas, and the cause of action, if there was any, arose on the
high seas.

The justice decided in favor of his jurisdiction, and the
cause was taken to the county court, where the same objection
was made and overruled, and final judgment rendered against
the ship.

The decision of the county court being the decision of the
highest court in California which had jurisdiction of the mat-
ter in controversy, the case was brought directly to the
Supreme Court of the United States by writ of error, and
heard at the December term, 1866.

After very labored arguments by counsel on both sides, the
Supreme Court said that the statute of California authorizing
actions *in rem* against vessels for causes of action cog-
nizable in the admiralty, was an attempt, to that extent, to
invest her State courts with admiralty jurisdiction, which, by
the judiciary act of 1789, had been exclusively vested in the
District Courts of the United States ; and that the clause in
the ninth section, saving to suitors " the right of a common
law remedy, when the common law is competent to give it,"
did not save a proceeding *in rem*, as used in the admiralty
courts, such a proceeding not being a remedy afforded by the
common law. *The Moses Taylor*, 4 Wallace, 411.

At the same term came on to be heard the case of *The Hine*
v. *Trevor*, ib. 555. That was a case of collision on the Mis-
sissippi river, near St. Louis, by the steamboat Hine with the
steamboat Sunshine, in which the latter vessel was injured.
Some months afterwards, the Hine, lying at Davenport, Iowa,

was seized in a proceeding instituted by the owners of the Sunshine, under the laws of that State, to subject her to sale in satisfaction of the damages sustained by their vessel. The statute of Iowa, under which the seizure was made, gave a lien against any boat found in the waters of that State, for injury to person or property by such boat, officers or crew; gave precedence in liens; authorized the seizure and sale of the boat without any process against the wrong-doer, whether owner or master, and saved the plaintiff all his common law rights, but made no provision to protect the owner of the vessel.

The owners of the Hine pleaded to the jurisdiction of the court, which the court disallowed. The case was taken to the Supreme Court of the State, and the judgment affirmed. A writ of error was sued out of the Supreme Court of the United States, to reverse this judgment.

The point made and argued there, was, how far the jurisdiction of the District Courts of the United States, in cases of admiralty, arising on our navigable inland waters, was exclusive, and how far the State courts might exercise jurisdiction concurrently.

After commenting on the cases before decided in that court on this question, and adverting to the case of the *Moses Taylor, supra,* the court say that case establishes the following propositions: *First*—The admiralty jurisdiction to which the power of the Federal judiciary is, by the constitution, declared to extend, is not limited to tide water, but covers the entire navigable waters of the United States. *Second*—The original jurisdiction in admiralty exercised by the District Courts, by virtue of the act of 1789, is exclusive, not only of other Federal courts, but of the State courts also. *Third*—The jurisdiction of admiralty causes arising on the interior waters of the United States, other than the lakes and their connecting waters, is conferred by the act of September 24th, 1789. *Fourth*—The admiralty jurisdiction exercised by the same

courts on the lakes, and the waters connecting those lakes, is governed by the act of February 3, 1845.

The court say, if the facts before them in the record constitute a cause of admiralty cognizance, then the remedy, by a direct proceeding against the vessel, belonged to the Federal courts alone, and was excluded from the State tribunals, and referring to the case of *The Magnolia*, 20 How. 296, which was a case of collision between two steamboats, and other cases since that, say: " That they were admiralty cases has never been doubted."

These cases, the court say, lead unavoidably to the conclusion that the State courts of Iowa acted without jurisdiction; that the law of that State, attempting to confer this jurisdiction, was void, because it was in conflict with the act of Congress of September 24th, 1789, and that this act is well authorized by the constitution of the United States.

In this case, it was argued by the counsel for the owner of the Sunshine, that the statute of Iowa might be fairly construed as coming within the clause of the ninth section of this act, which " saves to suitors, in all cases, the right of a common law remedy, when the common law is competent to give it."

The court said, the remedy pursued in the Iowa courts was, in no sense, a common law remedy ; it was a remedy partaking of all the essential features of the admiralty proceeding *in rem*, the statute providing that the vessel might be sued and made defendant without any proceeding against the owners, or even mentioning their names; that the writ might be issued and the vessel seized on filing a petition similar in substance to a libel ; that after a notice in the nature of a monition, the vessel might be condemned, and an order made for her sale, if the liability was established for which she was sued.

We have quoted the provision in the constitution of the United States applicable to the question.

The ninth section of the judiciary act of 1789, declares that "the district courts shall have, exclusively of the courts of the several States, * * cognizance of all civil causes of admiralty and maritime jurisdiction; * * saving to suitors, in all cases, the right of a common law remedy, when the common law is competent to give it." 1 U. S. Statutes at large, 77.

In the case of *The Moses Taylor* a contract made with the owner of a steamship, to carry a passenger by his ship, from Panama to San Francisco, was held to be a maritime contract, a breach of which could be enforced only in the District Court of the United States. The case of the *Hine* v. *Trevor*, was a collision between steamboats on the Mississippi river, and that was held to be a case of admiralty jurisdiction, and only cognizable in the same court to the exclusion of the State courts.

In the last named case, no point is made on the fact, that by the statute of Iowa, a lien was given on the vessel on the institution of the proceedings, but the statute was condemned because it authorized the vessel to be sued and made defendant without any proceeding against the owners, or even naming them, and for the other reasons which we have quoted above.

Now, the first question is, what is a cause of action cognizable in admiralty? Professor Parsons, in his work on Maritime Law, says, that within the question, what contracts and what torts are maritime, are certainly included salvage, bonds of bottomry, respondentia or hypothecation of ship and cargo, seamen's wages, seizures made under the laws of import, navigation or trade, and cases or questions of prize and ransom, and he would not hesitate to place, with almost equal certainty with these, all charter parties and contracts of affreightment, on voyages made between different states.

We have found no authority for saying that supplies furnished a steamboat in her home port, under a contract with the proper party, is, in its nature, and of necessity, maritime.

It is decided in the case of *Davis* v. *Child*, in the District Court of Maine, Davies R., 71, that although by the general maritime law of Europe, material men had a privileged lien on a vessel for repairs and supplies, in this country they had no such lien, in a port of the State to which the vessel belonged, unless allowed by the local law, and the court said the Admiralty Courts had no direct jurisdiction as to the matters of account, merely as accounts, even in maritime affairs; cognizance is only taken when the accounts are incidental to other matters within its jurisdiction.

In the case of *The General Smith*, 4 Wheaton, 438, it was decided, that the jurisdiction of the admiralty, in cases where the repairs have been made or necessaries furnished to a foreign ship, or to a ship in the ports of the State to which she does not belong, the general maritime law gives a lien on the ship as security, and the claimant might maintain a suit in the admiralty, to enforce his right. But as to repairs or necessaries in the port or state to which the ship belongs, the case is governed altogether by the local laws of the State, as no lien is implied, unless it is recognized by that law, and if the local law gives the lien, it may be enforced in the admiralty. These views were approved in the subsequent case of *Pegroux et al.* v. *Howard et al.*, 7 Peters, 324, and we do not understand the cases of *The Moses Taylor* and *The Hine* as conflicting with them.

Now, as by our municipal law, no lien is expressly created by the contract for furnishing supplies, and in furnishing them, and as none can be implied, it would follow, the court of admiralty had no jurisdiction, and consequently, the case was within the jurisdiction of the State court, for there must be a remedy somewhere, and the act of 1857 was passed to give one of a summary character. The provisions of that act are an application merely of the principles of the ordinary attachment law to the case of vessels whose owners are unknown, and is rather a mode of service of process on the owner,

through his property, in some respects like the trustee process in some of the New England States. Why it is not competent for the legislatures of the several States to make *service* on the property equivalent to service on the person, and as effectual for judgment, we cannot perceive. The attachment laws of the States have never been attacked as violative of any constitutional provision, and we see no reason why the act in question should not have full force, to effect the object designated by it. Remedies are within the control of the legislature, except in cases where the Constitution of the United States, or laws passed in pursuance thereof, have otherwise provided.

District courts have exclusive jurisdiction in all admiralty and maritime causes. The contract in question, if there was one, was not a maritime contract, as it was wholly performed by plaintiff at the home port of the vessel. For a breach of such a domestic contract, an action ought to lie in the courts of the State, and a summary proceeding, such as that authorized by the act of 1857, is but an ordinary exercise of a State right. If not so, then the claimant for these supplies has no adequate remedy. For the reasons given, however, the judgment must be reversed. The remedy of defendant is on the bond he took from the owner of the boat.

*Judgment reversed.*