THE TUG MONTAUK

*v.*

WILLIAM H. WALKER & Co.

</div>

47   335
82a  228

1. CONFLICT OF LAWS—*jurisdiction in proceedings in rem against boats and vessels.* Contracts with boats and vessels, strictly relating to the purely internal commerce of a State, are not subjects of admiralty jurisdiction, but are left to be enforced by the State tribunals.

2. If the vessel be a foreign vessel, (and such is its character if it plies between one State and another State,) contracts made with it are maritime contracts, and must be enforced in the admiralty; if she is a domestic vessel, and the contract made with her in her home port, admiralty has no jurisdiction, and resort must be had for its enforcement to the State tribunals.

3. SAME—*of the act of* 1857. The act of 1857 of the general assembly of this State, authorizing proceedings *in rem* against boats and vessels, in favor of certain classes of persons, is not in conflict with the constitution of the United States, giving to courts of the United States exclusive jurisdiction over maritime contracts, but was a legitimate exercise of the legislative power of the State, on a subject entirely domestic, and in no way affecting the trade or commerce with other States, or foreign nations.

4. JURISDICTION—*of the pleadings—and the presumption in respect thereto.* The general principle is, where the question comes up collaterally, that every presumption is to be made in favor of the jurisdiction of a court of general jurisdiction.

5. The Court of Common Pleas of the city of Cairo, is a court of general, though limited, jurisdiction, and the presumption applies to that court.

6. But, where on a given state of facts, jurisdiction is acquired by a State court, to the exclusion of an admiralty court, on a motion in the court where the proceeding is pending, to dismiss for want of jurisdiction, the jurisdictional facts must affirmatively appear.

7. So, where it is sought, by a proceeding in a State court, even of general jurisdiction, to enforce a contract made with a boat or vessel, by a proceeding *in rem*, it should appear affirmatively in the proceedings, that the vessel was a domestic vessel, and the supplies for which recovery is sought, were furnished her at the home port, in order that the jurisdiction of the State court may appear to the exclusion of the admiralty court.

APPEAL from the Court of Common Pleas of the City of Cairo; the Hon. JOHN H. MULKEY, Judge, presiding.

This was a proceeding, instituted in the court below, by W. H. Walker & Co. against the tug Montauk, by a warrant under the act of February 16th, 1857, in reference to proceedings *in rem* against boats and vessels. The further facts are stated in the opinion.

Mr. WILLIAM J. ALLEN and Messrs. GREEN & GILBERT, for the appellant.

Messrs. O'MELVENY & HOUCK, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, brought to the Court of Common Pleas of the city of Cairo, at the October term, 1866, by William H. Walker & Co. against the steam tug Montauk, under the act of the general assembly of February 16,

1857, called "The Steamboat Warrant Act." Scates' Comp. 789.

A motion was made by defendants, to dismiss the cause for want of jurisdiction, which was overruled; and the defendant saying nothing further in bar of the action, judgment was rendered against the boat by default, and damages assessed to one hundred and nine dollars, the amount of the plaintiffs' demand.

The principal error relied on to reverse the judgment, is, in sustaining the jurisdiction of the Common Pleas.

It is contended by the appellant that the contract, to enforce which these proceedings were had, was a maritime contract, and the remedy exclusively confined to the courts of admiralty and maritime jurisdiction.

We had occasion to examine and discuss this question in the case of *Williamson* v. *Hogan*, 46 Ill. 504, and reviewed, to some extent, the decisions of the Supreme Court of the United States thereon, which are found to have fluctuated very much, the early cases conceding the jurisdiction of the State courts, while the later cases—that of the *Moses Taylor*, 4 Wallace, 411, and the *Hine* v. *Trevor*, ib. 555—denied such jurisdiction.

We have no inclination to go over again the ground we traversed in that case, and will merely state the conclusion at which we arrived.

The proceedings therein showed, upon their face, that the steamer proceeded against was a domestic vessel, and the supplies, for which the action was brought, were furnished at her home port.

On the authority of the case of the *General Smith*, 4 Wheaton, 438, which holds that the jurisdiction of the admiralty, in cases where the repairs have been made or necessaries furnished to a foreign ship, or to a ship in the ports of the State to which she does not belong, the general maritime law gives a lien on the ship as security, and the claimant can

maintain a suit in the admiralty to enforce his right; but as to repairs or necessaries in the port or State to which the ship belongs, the case was governed altogether by the local law of the State, as no lien is implied, unless it is recognized by that law, we held, as by our statute, no lien was expressly created by the contract for furnishing supplies, and as none could be implied, it would follow, as these supplies were furnished to a domestic vessel, at her home port, a court of admiralty had no jurisdiction, and consequently, the case was within the jurisdiction of the State courts, for there must be a remedy somewhere, and our act of 1857 was framed to give one, and of a summary character. We considered that the provisions of that act were but an application of the principles of the, ordinary attachment law to the case of vessels whose owners are unknown, and was rather a mode of service of process on the owner through his property. We could not then see, nor can we now, why it is not competent for the legislatures of the several States to make service on the property equivalent to service on the person, and as effectual for judgment.

The reason of the ruling of the Supreme Court of the United States on this question, seems to be founded on that clause of the constitution of the United States which gives to Congress the power to regulate commerce with foreign nations, and among the several States. Sec. 8, article 1. This is apparent, from the case of *The New Jersey Steam Navigation Co. v. The Merchants' Bank,* 6 Howard, 392, where it was said that the exclusive jurisdiction of the court, in admiralty cases, was conferred on the national government, as closely connected with the grant of the commercial power, it being a maritime court, instituted for the purpose of administering the law of the seas, and the court says, "there seems to be ground, therefore, for restraining its jurisdiction, in some measure, within the limits of the grant of the commercial power." And in *Allen et al.* v. *Newberry,* 21 ib. 246, it was held, the admiralty jurisdiction did not extend to a case where

there was a shipment of goods from a port in one State, to another port in the same State, both being in Wisconsin. The libel in that case stated that the goods in question, were shipped at the port of Two Rivers, in the State of Wisconsin, to be delivered at the port of Milwaukee, in the same State.

In another case, from California, which was a proceeding *in rem* in the District Court of that State against the steamboat *Goliah*, to recover a balance of an account for coal furnished the boat under the law of California, the steamboat being engaged exclusively in trade within that State, the court said : " We have determined to leave all these liens depending upon State laws, and not arising out of the maritime contract, to be enforced by the State courts.   So in respect to the completely internal commerce of the States, which is the subject of regulation by their municipal laws ; contracts growing out of it should be left to be dealt with by its own tribunal," *Maguire* v. *Card*, ibid. 251.

Here it is distinctly announced as the doctrine, that contracts strictly relating to the purely internal commerce of a State, are not subjects of admiralty jurisdiction, but are left to be enforced by the State tribunals.

If the vessel be a foreign vessel, and such is its character if it plies between this State and another State, contracts made with it are maritime contracts, and must be enforced in the admiralty ; if she is a domestic vessel, and the contract is made with her in her home port, admiralty has no jurisdiction, and resort must be had for its enforcement to the State tribunals.   While the first description of vessels are connected with the commerce between the States and are entitled to the rights and privileges of such commerce, the last are not, and in their movements do not affect such commerce.   Engaged as they are, wholly in the domestic commerce of a State, contracts with them are cognizable by the courts of the State.

The act of the legislature of 1857, is not therefore obnoxious to the objection raised against it, but is a legitimate exercise

of the legislative power of the State, on a subject entirely domestic and in no way affecting the trade or commerce with other States or foreign nations.

We have no more doubt of the authority of our legislature to enact a law giving material men a lien, to be enforced *in rem* against domestic vessels engaged in commerce wholly within the borders of the State, than we have that they have power and authority to grant to material men and mechanics, a lien on the building they may erect, by a proceeding *in rem* against the building. Both are a proper exercise of State legislative functions, and not in conflict with the constitution of the United States, and no interference with the exclusive jurisdiction of the admiralty courts, nor conferring, in any manner, concurrent jurisdiction on the State courts, and are not opposed to the doctrine announced in the cases cited, of the *Moses Taylor* and *Hine*, *supra*, and are in full harmony with repeated decisions of the Supreme Court of the United States.

The question remains, had the court, in view of the principles here announced, jurisdiction?

In the case of *Williamson* v. *Hogan, supra,* the proceedings showed on their face that the vessel was a domestic vessel, and that the supplies were furnished to her in her home port. The jurisdiction was therefore apparent.

In the case before us there is no such showing. There is no averment in any part of the record that the "*Tug Montauk*" was a domestic vessel, or that the supplies were furnished her at her home port, or what port was her home port.

It is insisted by appellees, that the court will make every presumption that the court below had jurisdiction, and unless this court presumes the "tug" to be a foreign vessel, the judgment must stand; and further, they insist, that unless something appears in the record, or something is averred why the court had not jurisdiction, this court will not assume the court below had not jurisdiction, and if there be a state of case conceivable or possible, consistent with jurisdiction,

this court will sustain the judgment, and particularly so when a motion is made, argued and overruled, and no bill of exceptions or other matters preserved for review.

The general principle is undoubtedly truly stated by appellees, when the question comes up collaterally, that every presumption is to be made in favor of the jurisdiction of a court of general jurisdiction. The court of common pleas of the city of Cairo, is a court of general, yet limited, jurisdiction, and the presumption applies to that court.

In this case, the question of jurisdiction was distinctly made by appellant by motion to dismiss in that court, and the motion is fully preserved in the record. The court in considering the motion, had, necessarily, to inquire into the subject matter of the action; the papers filed in it, from the præcipe to the declaration, contain no averment that the "tug" was a domestic vessel, and that the supplies were furnished in her home port; consequently sufficient did not appear in the proceedings to set the court in motion. To that court it should have been made to appear, by the proceedings, affirmatively, that it was a case cognizable by a State tribunal. Had the declaration averred the fact that the "tug" was a domestic vessel, and the supplies furnished her at her home port, in the absence of all evidence to the contrary, the jurisdiction would have been established, and the finding of the court, there being no bill of exceptions, could not be inquired into by this court, and jurisdiction would be presumed.

In cases like this, where on a given state of facts, jurisdiction is acquired by a State court, to the exclusion of an admiralty court, these facts must be affirmatively stated, on the principle that he who claims a right must aver it, and establish the right. He should have brought his case, by proper averments, within the law. This he has not done, and consequently the judgment must be reversed.

*Judgment reversed.*