# Schooner "Norway"

## v.

## Christian Jensen.

52　373
129　586

1. PLEADING—*claiming a statutory benefit or remedy.* A party claiming a benefit or a remedy given by statute, must bring himself, by proper averments and pleadings, within its provisions.

2. ATTACHMENT OF BOATS AND VESSELS—*under act of* 1857—*whether confined to boats navigating rivers.* The act of 1857, giving a summary remedy in certain cases, against steamboats and other water craft, is not confined in its operation to that class of vessels navigating the rivers within or bordering upon this State, but embraces those employed upon any of our navigable waters, whether lake or river.

3. SAME—*for what cause the statutory remedy may be invoked.* This act gives the remedy against the craft or vessel, by seizure, &c., " for injuries done to persons by such craft," the bearing and spirit of which provision is, as inanimate things have no will to direct them, but must be controlled by intellect, that the vessel or craft assumes the personalty of the owner, who is liable for an injury done by it.

4. So, where a sailor on board a vessel was injured by reason of the negligence of the owner to provide ropes in a sound and safe condition, with which to cat the anchor, this was held to be within that clause of the statute giving the remedy " for injuries done to persons by such craft," and it is sufficient, in such case, to allege that the injury was the result of the negligence of the owners.

5. MASTER AND SERVANT— *injuries to the latter from negligence of the former.* A master is responsible to his servant for injuries received by him from defects in the structures or machinery about which the services were rendered, which defects the master knew, or ought to have known.

6. BOUNDARIES OF THIS STATE—*embracing a part of Lake Michigan.* By the act of congress prescribing the boundaries of this State, and by the constitution of the State conformable thereto, so much of Lake Michigan as is included by lines, one running north from the point where our eastern boundary strikes the southern bend of the lake to a point in the middle of the lake, in north latitude 42 degrees 30 minutes, and thence west along that parallel, is within the limits of this State.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a suit commenced in the court below, by Christian Jensen, against the schooner " Norway," to recover damages sustained by the plaintiff, in consequence of injuries received by him when employed as a sailor on board said vessel, caused by the falling of a block connected with the " fish tackle," upon the plaintiff, by reason of the breaking of the " fish tackle pennant," a portion of the rigging used in " catting " or raising the anchor from the catheads on board the vessel.

The suit was commenced on June 15, 1868, by the filing of an affidavit of the plaintiff, as follows :

That on or about May 1st, 1868, he was employed as a seaman to serve on board defendant, by Enoch Swanson, master, for a voyage from Chicago to the port of Muskegon, Michigan.

That plaintiff, on said 1st day of May, went on board said vessel, and commenced his services as seaman.

That on the same day, while plaintiff was in the discharge of his duty, and obeying the commands of the officers of said vessel, in taking in the anchor, the fish tackle pennant, a part of the rigging attached to the mast, and used for hoisting or catting the anchor, broke, and the block connected with and being part of said tackle, fell on plaintiff with great force, breaking his arm and doing him other bodily injury.

That said injuries were entirely owing to said vessel being unseaworthy, in that said tackle and rigging connecting the mast with the anchor were unsound and in a rotten condition.

That said injury was not owing to any negligence or want of care on his part, but entirely owing to the negligence of the owners of said vessel, in keeping said vessel in an unsound and unsafe condition.

That said vessel, at the time of the said injuries, was running upon the navigable waters within and bordering on the State of Illinois.   That by reason of said injuries he was damaged to the amount of $2000.

Prays that said schooner may be seized by the sheriff of Cook county according to the statute in such case provided.

Upon this affidavit or complaint, and a *præcipe* accompanying the same, a warrant for the seizure of said vessel was issued, under the provisions of the act of 1857, giving a summary remedy against boats and vessels in certain cases.

In respect to the waters which were being navigated by the vessel, the declaration alleged that, at the time of said injury, she was employed in commerce and navigation, and was running on " waters within and bordering on said State " of Illinois, being then in the port of Chicago, and destined on a voyage from that port to a port in the State of Michigan.

A trial resulted in a verdict and judgment for the plaintiff for $1000. This appeal was taken on behalf of the vessel.

Messrs. MILLER, VANARMAN & LEWIS, for the appellant.

The affidavit does not show a state of case sufficient to give the court below jurisdiction, under the act of 1857, which only attempts to give this summary remedy against such boats and vessels as are navigating the " rivers within and bordering upon this State." The affidavit states that this vessel was navigating the *waters* within and bordering the State, and, at the time of the alleged injury, was lying in the port of Chicago, and bound thence on a voyage to a port in another State. The vessel was engaged in the navigation of Lake Michigan, and therefore not embraced in the description of vessels navigating the " rivers within and bordering upon " the State.

If the act is to be construed as applying to the lakes outside the State, it would be void, by reason of its conflict with the law of Congress, of 1789, vesting all admiralty jurisdiction in the district courts of the United States, to the exclusion of the State courts. *Williamson* v. *Hogan*, 46 Ill.—and cases there cited.

Conceding, however, the act of 1857 to be valid, it does not cover the injury complained of in the present case.

It provides for injuries to persons, &c. " done by the vessel or craft, &c."

Was the injury complained of done or caused by the said vessel, according to the meaning and spirit of the above provision?

The plaintiff, in his declaration, alleges that the injury was caused by the negligence of the owners of the vessel.

The act provides a remedy for injuries done by the vessel, officers or crew, but not for injuries done or committed by owners.

This injury is not alleged to have been done by the vessel, officers or crew, but to have been caused by the misconduct of the owners.

We insist that an injury caused as this is alleged in the declaration to have been caused, solely by the misconduct of the owners, is not, according to the meaning of said act, done by the vessel, and therefore is not one of the injuries for which such summary remedy is provided.

Messrs. RAE & MITCHELL, for the appellee.

The objection to the jurisdiction in this case is founded on the fact that the affidavit, which is the foundation of the suit, uses the word *waters* instead of *rivers*.

The 11th section of the act provides "that the act shall be so construed as to authorize and enable any person or persons to bring said action, notwithstanding such water craft may not have been, at the time when such cause of action accrued, navigating the *waters* within or bordering upon this State."

The word "*waters*" seems there to be contemplated by the act, and if the craft is navigating *waters* within or bordering, &c., persons who are injured are expressly authorized to maintain such action.

The State of Illinois has no other waters naturally navigable within her territory except rivers.

Waters and rivers are sometimes used synonymously, and where a word is susceptible of two significations, one of which

represents a legal right, the court will so construe and interpret its use when employed in a legal proceeding.

The affidavit states the injury to have occurred while the schooner was running "upon the navigable waters of the State," and as the State has no navigable waters for schooners to run, except "*rivers,*" the court will construe the word *waters* to mean *rivers.*

The statute should not be construed strictly in reference to this remedy. The law on the subject is briefly this : In 1845, Judge STORY framed an act, which was passed by congress on the 26th of February of that year, purporting to be an act to extend the admiralty jurisdiction on the great lakes. In this statute, the jurisdiction of the admiralty courts is not made exclusive, but is expressly made concurrent with " such remedies as may be given by State laws, where such steamer or vessel is employed." · 5 U. S. Statutes at Large, 726.

Therefore, the State of Illinois is left at liberty, so far as concerns vessels navigating her waters, or bordering upon them, navigable from the lakes, to adopt such remedies as may be concurrent with those possessed by the admiralty over such waters. *The Hine* v. *Trevor,* 4 Wallace, 556.

The next objection is, that the plaintiff's cause of action fails to show such a claim against said vessel, as provided for in this statute.

The claim is, that he received an injury from said craft, " while a hand on such craft, at the time of such injury." This is the language of the statute, but it is contended that it is alleged by the plaintiff that such injury inflicted by said craft was in consequence of the negligence of the owners, &c., and that the act provides a remedy for injuries by the vessel, officers or crew, but not for injuries done or committed by owners.

The Supreme Court of the United States answered this proposition in the case of the brig James Gray, 21 How. 194, and re-affirmed in 24 How. 123, and 2 Wall. 556 and 59.

It is true, says the court, that the *res,* or thing which struck the James Gray, did the damage. But the mere fact that one

vessel strikes and damages another, does not, of itself, make her liable for the injury ; the collision must, in some way, be occasioned by her fault.     A ship, properly secured, may, by the violence of the storm, be driven from her moorings and forced against another vessel, in spite of her efforts to avoid it. Yet she certainly would not be liable for damages which it was not in her power to prevent.

Now, as a vessel could make no efforts *herself*, but only those in command of her, it must always necessarily be alleged that the injury occurred through human fault or unskillfulness.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The important question presented by this record is one of jurisdiction.     Did the plaintiff, by his affidavit, bring himself within the provisions of the act of February 16, 1857, entitled, " Liability of Vessels " ?   Scates' Comp. 789.

Appellant's counsel contends that the class of vessels and boats against which the statute provides this summary remedy, consists only of such as are navigating " the rivers " within and bordering on this State, while the affidavit states only that the vessel was navigating the " waters " within and bordering thereon.

It is an admitted principle that a party claiming a benefit or a remedy given by statute, must bring himself, by proper averments and pleadings, within its provisions.

The act above cited is " an act to amend chapter 102 Revised Statutes, entitled, ' Steamboats,' " by the first section of which it is provided that owners of steamboats navigating the Mississippi, Ohio, Wabash, Illinois, and other rivers and lakes within the jurisdiction of this State, shall have a competent master, officers and crew on board, and to have a substantial and sufficient engine, boilers or boiler, and to have the same at all times in good and safe order and condition, and have the vessel supplied with all necessary boats, tackle and furniture, and in every respect seaworthy.

The act of 1857, by its first section, provides that steamboats and other water craft navigating the rivers within or pordering upon this State, shall be liable for debts contracted on account thereof by the master, &c. for materials, supplies, or labor in building, repairing, furnishing or equipping the same, or due for wharfage, and also for damage arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft, or for any damage or injury done by the captain, or mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger or hand on such steamboat or other water craft, at the time of the infliction of such damage or injury.

The second section provides that any person having such demand may proceed against the owner or owners, or master of such craft, or against the craft itself.

Section three provides, when suits shall be commenced against the craft, the plaintiff shall file his præcipe to that effect, naming such craft, if she have a name, and with it a bill of particulars of his demand, verified on his own affidavit, or that of his agent or attorney, or other credible person.

Section four provides for issuing a warrant by the clerk, returnable as other writs, directing the seizure of such craft, by name or description, or such part of her apparel or furniture, as may be necessary to satisfy the demand, and to detain the same until discharged by due course of law.

The fifth section provides for bonding the vessel by the owners. The sixth provides that the pleadings and other proceedings shall be as in other cases of process served and returned.

Section eleven provides that the act shall be so construed as to authorize and enable any person or persons to bring the action against the water craft, notwithstanding the cause of action may have accrued beyond or out of the limits or jurisdiction of this State, and although such water craft may not have been at the time such cause of action accrued navigating

the waters within or bordering upon this State. Session Laws, 1857, pp. 105, 107.

These statutes, the last being amendatory of the first named, must be considered together. They were designed to embrace vessels engaged in domestic navigation only—such vessels or craft as should be employed on our navigable waters. The counsel for appellee are surely mistaken when they say this State has no other waters naturally navigable within its territory, except rivers. By the act of Congress prescribing the boundaries of this State, and by the constitution of the State conformable thereto, it will be perceived no inconsiderable portion of Lake Michigan is within our territorial limits. The maps do not show it, yet the fact is nevertheless so, that so much of the lake as is included by lines, one running north from the point where our eastern boundary strikes the southern bend of the lake to a point in the middle of the lake, in north latitude 42 degrees 30 minutes, and thence west along that parallel, is undeniably within our limits. It is true, no portion of this vast body of water has been assigned to the counties bordering upon it, or received in any manner the attention of the legislature, yet it is, nevertheless, a portion of the navigable waters of this State and of our territory.

The language of the affidavit is, that the vessel, at the time of the injury, was running upon the navigable waters within and bordering upon this State. The objection is, that it should have alleged that the vessel was employed in navigating the rivers within or bordering upon this State.

When the purpose and object of the acts in question are considered, the terms, rivers and navigable waters, must be regarded as synonymous. The object of the statutes being to give a summary remedy against vessels employed in domestic navigation on the navigable waters of this State, the object is attained by applying them to any navigable water, be it lake or river, and there is the same necessity of applying them to vessels navigating the lake, as exists for their application to rivers, a portion of the former and the whole of the latter being

within our territorial jurisdiction. This, we think, is made quite apparent from the language of the eleventh section which we have quoted. The intent of that act was to afford a remedy and to embrace vessels other than steamboats not included in the original act of 1845, and it is no forced construction of the words used in the act of 1857 to embrace within them vessels and craft engaged in navigating, not only the rivers, but the waters within our jurisdiction.

The affidavit, we think, shows enough to give jurisdiction, and to bring the case within the act of 1857. On the general subject of jurisdiction, we have expressed our opinion fully in *Williamson* v. *Hogan*, 46 Ill. 504, and desire to add nothing thereto.

Another point made by appellant's counsel is, conceding the jurisdiction, the act does not cover the injury of which complaint is made; that while the act provides a remedy for injuries done to persons by the vessel or craft, the declaration alleges the injury was caused by the negligence of the owners of the vessel.

This point is not much elaborated. While the statute speaks of injuries done by the vessel or craft, the bearing and spirit of that provision most clearly is, as inanimate things have no will to direct them, but must be controlled by intellect, such vessel or craft assumes the personalty of the owners, who have control over all, vessel, crew and officers. It follows, therefore, that, for an injury done by a vessel, the owners must be responsible. Like a railroad corporation, they are constructively present at all times, in the persons of their agents, and are held liable, in all courts, for their negligence from which an injury results to another. It is well settled a master is responsible to his servant for injuries received by him from defects in the structures or machinery about which the services were rendered, which defects the master knew, or ought to have known. *Chicago and Northwestern Railroad Co.* v. *Swett, Adm.* 45 Ill. 197. Other cases to the same effect might be cited, but it is unnecessary.

The remaining point is, that there was a total failure of evidence to support the action.

We think the proof is ample on this point. That the rigging of the vessel was rotten, and had been so for some time, was known to the owners. The captain, representing them, was told so more than once, and that this particular rope was frayed and in a damaged condition, was also well known. Its condition could be seen, and the safety of the crew demanded attention to it. Cutting an anchor requires force, and the mechanical means by which it is obtained should be sound and free from defects. That this pennant was not, is clearly shown. It is no hardship upon owners of a vessel to require them to have all mechanical as well as human agencies employed by them, trustworthy. If they fail in this, they cannot expect a favorable verdict in an action against them, founded upon their negligence.

The instructions, being substantially in accordance with the views herein expressed, were correct. There being no error in the record, the judgment must be affirmed.

*Judgment affirmed.*