62   221
129   587

62   221
39a   22

62   221
90a   ⁴382

## Tug Boat E. P. Dorr

*v.*

## Asa D. Waldron *et al.*

1. BOATS AND VESSELS—*statutory lien—release*. The lien given on boats and vessels for supplies, etc., is not created by the levy of an attachment writ, but by statute, and the levy is but a means furnished to enforce the lien. Therefore, where a tug boat was discharged from attachment by order of the court on the execution of a bond by the owners as allowed by the statute, and the attachment suit under which the levy was made, was dismissed by the plaintiff, it was *held*, that the statutory lien was not thereby released, and a plea in a second suit by attachment, of the discharge of the vessel by the giving of bond in the prior suit, was adjudged bad on demurrer.

2. CONFLICT OF LAWS—*jurisdiction of State and Federal courts*. The jurisdiction of the United States District Courts on the lakes and navigable waters connecting the same, is governed by the act of Congress of February 3, 1845, and is not exclusive, but is concurrent with such remedies as may be given by State laws.

3. A maritime lien does not arise on a contract for materials and supplies furnished to a vessel in her home port; and in respect to such contracts, it is competent for the State legislatures to create such liens as they

may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations for their enforcement.

4. The proceedings by attachment given by the statutes of this State against boats and vessels to enforce liens for supplies, etc., have no resemblance to libels in the courts of admiralty, but are of the same character as ordinary suits by attachment, requiring notice to be given of the pendency of the suit, and by them no prior liens are interfered with. They are not proceedings in admiralty such as the district courts of the United States are invested with exclusive jurisdiction over by law.

5. Jurisdiction—*objection to not made in court below.* On appeal from the judgment of the Superior Court of Chicago rendered in a suit by attachment against a vessel for supplies furnished, it was objected that the proceedings failed to show that the court had jurisdiction, and that the affidavit did not show that the supplies were furnished at the home port of the vessel, and that she was a domestic vessel: *Held,* that as the objection was one that might have been obviated by amendment, if made in the court below, it came too late when urged for the first time in this court.

6. Same—*presumption.* In the absence of a bill of exceptions preserving the evidence, this court will presume that every fact necessary to bring the case within the jurisdiction of the court and establish a cause of action was proved on the trial.

Appeal from the Superior Court of Chicago; the Hon. Joseph E. Gary, Judge, presiding.

Mr. William H. Condon, for the appellant.

Mr. Norman C. Perkins and Mr. J. A. Crain, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

This was an attachment under the act of 1845, brought to the Superior Court of Chicago at the June term, 1870.

The proceedings were regular under the statute, by affidavit, bond, statement of the cause of action, and bill of particulars, on which a writ of attachment issued, and was levied on the tug boat in question, " E. P. Dorr," and by reading the writ " to Joseph Moffett, owner of said tug boat."

The boat appeared by attorney and pleaded *nil debit,* and a special plea as follows :

And for a further plea in this behalf, the defendant says, *actio non,* because it says, true it is that plaintiffs had, on December 18, 1869, a good and valid lien against, and on said defendant for supplies furnished to said defendant for the sum of money in said declaration mentioned, and on said date caused a writ of attachment to be issued out of and under the seal of the circuit court of said Cook County and the State of Illinois, being a court of record of superior jurisdiction, against the defendant, authorizing and directing the seizure and detention of the defendant with its engines, machinery, sails, rigging, tackle, apparel, and furniture, by the sheriff of said Cook County; that by virtue of said writ of attachment, the sheriff of said Cook County, on the 18th day of December, 1869, aforesaid, did attach, seize, and detain said defendant, with its engines, machinery, rigging, sails, tackle, apparel, and furniture, until the 28th day of March, 1870, when said defendant was released from custody of said sheriff, by the order of the Hon. E. S. Williams, judge of said circuit court, upon the bond of Joseph Moffett (the owner of said defendant), and W. S. Swan, which said bond was approved by said Hon. E. S. Williams, judge of said circuit court, on said March 28, 1870, which said bond released said defendant from the lien sought to be enforced in said suit; that said plaintiffs filed their declaration in said circuit court, on December 20, 1869, and defendant filed its plea and affidavit of merits in due time thereafter in time to prevent default; and said cause was at issue in said circuit court from the filing of said plea by defendant, until the 21st day of June, 1870, when said suit was dismissed at said plaintiffs' costs by said plaintiffs' attorneys, and this suit commenced by said plaintiffs for the same supplies mentioned in the suit previously begun in the circuit court as aforesaid.

And this the defendant is ready to verify, wherefore, etc.

To this plea there was a demurrer, which the court sustained.

The cause was then, by agreement, submitted to the court,

who found for the plaintiffs twelve hundred and sixty dollars and costs, and rendered judgment for the same.

To reverse this judgment the defendant appeals, the bond being executed by Joseph Moffett, describing himself as " of the city of Cleveland, in the State of Ohio, and sole owner of the tug E. P. Dorr."

The only question presented by the pleadings is the decision of the court upon the demurrer to the second plea.

The point presented by that plea is the fact that a prior attachment had been sued out of the circuit court against this tug, by which she was held until the 28th day of March, 1870, when she was released from the custody of the sheriff by the order of the circuit judge on the execution of a bond by Joseph Moffett, the owner, and one W. S. Swan. The cause was at issue in that court until the 21st day of June, 1870, when the suit was dismissed at the costs of the plaintiffs, and the present suit immediately thereafter, and on the same day, was commenced.

Appellant contends that the act in question being in derogation of the common law, should be construed strictly, so that when a boat is discharged upon bond being given the boat would be released from the lien sought to be enforced, and would only be liable to be taken and sold on execution issued on the judgment obtained against the boat, or upon the judgment which might be rendered upon the bond. The point appellant makes is, that the release of the tug by order of the circuit judge, on the execution of the bond, forever discharged the boat from the lien which appellees originally had on it, and that they must now look to their bond or resort to their common law remedy against the owner of the vessel.

Appellant cites, in support of his views, *Martin* v. *Dryden et al.* 1 Gilman, 187, and *Conn et al.* v. *Caldwell,* id. 531.

These cases were under the general attachment law, under the operation of which a lien is created by the levy of the writ of attachment. It follows, necessarily, when the writ, or the suit consequent upon it, is dismissed the lien is gone ; but no one ever supposed that another lien could not be had by the

levy of another writ in another suit. In this case the lien was not created by the levy, but the levy was to enforce a lien created by law, and existed independent of a levy.

An abortive attempt to foreclose a mortgage by suit, when the cause was not tried on its merits, but dismissed on the plaintiff's motion, would destroy no lien created by the mortgage.

Another point made by appellant is, that it does not appear from the papers and proceedings in the cause that the Superior Court had jurisdiction.

This point was not raised in the court below in any form, and is now raised here for the first time, and it is based on the ground that the affidavit does not show the supplies were furnished at the home port of the vessel, and that she was a domestic vessel. *Tug Montauk* v. *Walker*, 47 Ill. 335.

Had this point been made in the court below the plaintiffs then might have taken leave to amend. *Frink et al.* v. *King, Adm'r*, 3 Scam. 144. It is now too late to make the objection.

The general question of the jurisdiction of a State court as conferred by the acts of 1845 and 1857, are considered at some length in *Williamson* v. *Hogan*, 46 Ill. 504, and the *Tug Montauk* v. *Walker, supra,* and *Schooner Norway* v. *Jensen*, 52 id. 373, with reference to the decision of the Supreme Court of the United States in *The Hine* v. *Trevor*, 4 Wal., and other cases decided in the same court.

In "The Hine" case the court say, "We are sensible of the extent of the interests to be affected by our decision, and the importance of the principles upon which that decision must rest, and have held the case under advisement for some time, in order that every consideration which could properly influence the result might be deliberately weighed."—P. 561. It was then distinctly announced that the jurisdiction of the District Courts of the United States, on the lakes and navigable waters connecting the same, was governed by the act of 1845, and that the jurisdiction is not exclusive, but expressly made concurrent with such remedies as may be given by State laws.—Pp. 566–569.

15—62d Ill.

*The Hine* v. *Trevor* was an action for a collision of steamboats running on the Mississippi River. It was decided to be a maritime tort, and cognizable exclusively in the admiralty, by force of the judiciary act of 1789, and properly, as that river was navigable from the sea by vessels of ten or more tons burden.

At the same term the case of "the Moses Taylor" was decided. id. 411. That action was on a contract to transport a passenger by sea from New York to California, clearly a maritime contract, wholly to be performed on the sea, and of which a court of admiralty had exclusive jurisdiction, under the act of 1789. The act of 1845 had no place in the discussion, it was not alluded to by counsel or court, nor could it have been, the only question being, was the remedy given by the act of the legislature of California within the saving of the act of 1789? These cases were decided in 1866.

The next, in order of time, was the case of "The Belfast," 7 Wallace, 624, decided in 1868.

It arose in the State of Alabama on a contract of affreightment of cotton between ports in that State, and was prosecuted under an act of the legislature of that State, entitled, "proceedings in admiralty," by which a lien was created on the vessel, and proceedings to enforce it were allowed; in which, if there was more than one complaint, all were to be consolidated, and the court was required to render but one judgment against the vessel, and that, condemning *ex parte* the boat, tackle, etc., to be sold in satisfaction of the claims, and the affidavit of complainant was made presumptive evidence of the justice of the demand; and by a proviso to the act it was enacted, "unless when otherwise provided in this chapter, the proceedings to enforce the lien shall be the same as in the courts of admiralty of the United States; but either party may have any question of fact decided by a jury, upon an issue made up under the direction of the court."

There was created by this statute a court of admiralty in the State of Alabama, whose proceedings were, as in such court, strictly *in rem*, and the law was held to be of no effect,

as it trench'd upon the exclusive jurisdiction of the Federal courts in such cases.

The ground assumed by the libellants was, that the State court had jurisdiction under that clause of the judiciary act of 1789 (section 9), which saves " to suitors in all cases the right of a common law remedy when the common law is competent to give it."

The theory of the defendants was that the libels were libels *in rem*, to enforce a maritime lien in favor of the shippers of the cotton under the contracts of affreightment for its transportation from one port to another, upon navigable waters, and that the State courts had no jurisdiction to employ such a process to enforce such a lien in any case; that the jurisdiction to enforce a maritime lien by a proceeding *in rem*, was exclusively vested in the Federal courts, by the Constitution of the United States, and the laws of Congress.

The court in the discussion of these questions make but a bare allusion to the act of 1845, and in terms of approval as we understand them.   They say, " Remarks, it is conceded, are found in the opinion of the court, in the case of *Allen et al.* v. *Newberry*, 21 Howard, 245, inconsistent with these views; but they were not necessary to that decision, as the contract in that case was for the transportation of goods on one of the western lakes where the jurisdiction in admiralty is restricted, by an act of Congress, to steamboats and other vessels employed in the business of commerce and navigation between ports and places in different States and Territories"—referring to *The Hine* v. *Trevor, supra.*

The court further say, " No such restrictions are contained in the ninth section of the judiciary act, and consequently those remarks, as applied to a case falling within that provision, must be regarded as incorrect."

A further allusion is made to the act of 1845, in commenting upon the decision in "The Magnolia," 20 Howard, 296, in which the court held that the district courts exercise jurisdiction over fresh water rivers, " navigable from the sea" by virtue of the ninth section of the judiciary act, and not as con-

ferred by the act of the 20th of February, 1845, which is applicable only to "the lakes and navigable waters connecting said lakes."

The libellants contended that the saving clause in the judiciary act gave a remedy in the State courts—that they had, by that act, concurrent jurisdiction, but the court say, nothing is said in that act about a concurrent jurisdiction in a State court or in any other court, and it is quite clear that in all cases where the parties are citizens of different States, the injured party may pursue the common law remedy here described. and saved, in the circuit court of the district as well as in the State courts.

They say, " Original cognizance is exclusive in the district courts, except that the suitor may, if he sees fit, elect to pursue a common law remedy in the State courts or in the circuit court, as before explained, in all cases where such a remedy is applicable.  Common law remedies are not applicable to enforce a maritime lien by a proceeding *in rem*," etc. ; and further, " State legislatures have no authority to create a maritime lien, nor can they confer any jurisdiction upon a State court to enforce such a lien by a suit or proceeding *in rem* as practiced in the admiralty courts."

This was all well said, doubtless, as applicable to the Alabama State law where the proceedings were designed to be *in rem* as practiced in the admiralty courts.

But in concluding the opinion the court say, " Such a lien (a maritime lien) does not arise in a contract for materials and supplies furnished to a vessel in 'her home port, and in respect to such contracts, it is competent for the States, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a *regulation* of commerce, and to enact reasonable rules and regulations prescribing the mode of their enforcement," referring to "*The General Smith*," 4 Wheaton 438, and is the ground assumed by this court in *Williamson* v. *Hogan*, 46 Ill. 504.

It will be noticed, nothing is said in " The Belfast," about the saving clause of the act of 1845, though, regarding in

the most unqualified terms, the operation of that act on our lakes and rivers.

At the same term of the court came on the case of the steam tug "Eagle," 8 Wal. 15.

This was an appeal from the district court for the eastern district of Michigan, in which the question made on this record, was not before the court in any shape. It was there held that this act of 1845 was obsolete and inoperative. Since the decision in "The Genessee Chief," 12 How. 243, in which it was held that the jurisdiction of the district courts in such cases extended over all the navigable waters of the United States, without regard to the ebbing and flowing of the tide.

In the opinion delivered in that case by Chief Justice Taney, it is nowhere intimated that the act of 1845 was not, what it purported to be, an act to extend the jurisdiction of those courts, and valid, and binding, and operative. That case arose under that act, and was prosecuted under it.

The effect of the decision was to overrule the many prior decisions of that court upon the question of the limit of the jurisdiction of the district courts. The chief justice said, in that very case, that the act of 1845 was a limitation of the powers previously conferred on the Federal courts.

The opinion in the case of "The Eagle," *supra,* declares the act is obsolete and of no effect, with the exception of the clause which gives to either party the right of trial by jury when requested, which, the court say, is rather a mode of exercising jurisdiction than any substantial part of it. The saving clause in this act as to the concurrent remedy at common law, is, in effect, the same as in the act of 1789, and is, therefore, of necessity, useless and of no effect.

It will be seen, the question raised in the case before us, was not a question in "The Eagle," and whatever may have been said touching it was *obiter.*

We had thought there might be a necessity for the act of February 3, 1845, inasmuch as by the judiciary act of 1789, admiralty jurisdiction extended only to such waters as were

navigable from the sea by vessels of ten tons burden and upward. The lakes were not so navigable.

The important saving in the act of 1845 " saving any concurrent remedy which may be given by the State laws; when such steamer or other vessel is employed in such business of commerce, and navigation" is omitted from the consideration of the court. It is not decided Congress was incompetent to enact such a clause. It would seem if that body could provide a saving of one kind it could another, and here it is provided, in the record, in express terms.

The record contains no bill of exceptions preserving the evidence. Every intendment, therefore, must be indulged in favor of the finding of the court as in the case of the verdict of a jury. We will presume, in the absence of the evidence, that every fact requisite to bring the case within the jurisdiction of the court, and establish a cause of action under the statute, was proved upon the trial.

The proceedings have no resemblance to those in courts of admiralty, but are of the same character as in an ordinary attachment under the statute, requiring notice to be given of the pendency of the suit, and no prior liens are interfered with. *Germain* v. *Steam Tug Indiana,* 11 Ill. 535 ; *The Belfast, supra.*

For the reasons given the judgment is affirmed.

*Judgment affirmed.*