White, J.
The first question for our determination is, whether the court below had jurisdiction of the cause. This question depends upon whether the original suit was in its nature and effect a proceeding in rem in admiralty.
The suit was instituted by the plaintiff below against the steamboat General Buell, as sole defendant, under the water-craft law of this state, for the breach of a contract to transport *the plaintiff, [527 his wife, and baggage from Louisville to Cincinnati.
If the inland lakes and rivers bordering this state, and which are navigable in fact, are to be regarded as navigable in law, and subject to admiralty jurisdiction, the cases provided for in our water-craft law may be divided into two classes: such as are of admiralty cognizance, and such as are not. To the latter class belong contracts for building the vessel, and contracts for materials and supplies furnished in her home port. The Belfast, 7 Wallace, 645; Williams v. Hogan, 46 Ill. 517.
We arc not called on to discuss or define the exact boundaries of admiralty jurisdiction, as applied to its various subjects. The general rule is that it embraces all maritime contracts, torts, and offenses. But we need not inquire what contracts are to be regarded as maritime, beyond what is necessary for the decision of the case before us.
As respects the present question of jurisdiction, the point of inquiry is whether the water-craft law of this state is rendered inoperative to any extent by the constitutional legislation of Congress vesting the jurisdiction of admiralty causes in the district courts of the United States; and, if so, whether such repugnancy between the state law and the law of Congress defeats the remedy resorted to under the statute in the present case.
*528 By article three of the constitution of the United States it is declared that the judicial power of the United States shall extend “to all cases of admiralty and maritime jurisdiction.”
Section nine of the judiciary act of 1789 provides that the distinct courts of the United States “shall have exclusive cognizance of all civil cases of admiralty and maritime jurisdiction, including all seizures under the laws of impost, navigation, or trade of the United States, where the seizures are made on waters-which are navigable from the sea by vessels of ton or more tons burden; . . . saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.”
By the act of Congress, passed February 26, 1845, it is provided 528] “ that the district courts of the United States shall *have, possess, and exercise the same jurisdiction in matters of contract and tort, arising in, upon, or concerning steamboats and other vessels of twenty tons burden and upward, enrolled and licensed for the coasting trade, and at the same time employed in business of commerce and navigation, between ports and places in different states and territories, upon the lakes and navigable waters connecting said lakes, as is now possessed and exercised by said courts in cases of like steamboats and other vessels employed in navigation and commerce upon the high seas or tide-waters within the admiralty and maritime jurisdiction of the United States;” . . . saving to the parties the right of trial by jury, also “the right of a concurrent remedy at the common law, where it is competent to give it, and any concurrent remedy which may be given by the state laws.” Brightly’s Dig. U. S. Laws, 22, 25.
The exercise of admiralty jurisdiction is governed by these statutes. The act of 1845 is limited in its operation to the lakes and ■the navigable waters connecting them. The jurisdiction to be exercised under it is confined to vessels of twenty tons burden and upward, enrolled and licensed for the coasting trade, and which are employed in commerce and navigation between ports and places in different states and territories. It saves to parties not only the common-law remedy which was saved by the act of 1789, but any concurrent remedy which may be given by state laws.
Cases arising upon the other navigable waters of the United States are governed by the act of 1789, which does not contain these special provisions.
By failing to observe the difference between the local operation *529 of these acts, the limitations contained in the act of 1845 have sometimes been supposed to apply to cases arising under the act of 1789.
The present case arises under the last-named act. The cases of Thompson v. The Steamer J. D. Morton, 2 Ohio St. 26, and Keating v. Spink, 3 Ohio St. 105, arose under the act of 1845.
Under the act of 1789, original jurisdiction is made exclusive in the district courts, except as to the right of a *coramon-law [529 remedy. Under the act of 1845 parties have, in addition to the common-law remedy, any concurrent remedy which may be given by state laws. '
It was formerly supposed that the admiralty jurisdiction of the United States was limited to tide-waters. But in the case of the G-enesee Chief, decided in 1851 (12 How. 450-457), the former decisions of the Supreme Court of the United States, recognizing this principle, were re-examined and overruled; and the broad doctrine was asserted that the jurisdiction depended upon the navigable character-of the water, and not upon the ebb and flow of the tide; that the English rule of determining the character of a public navigable river, by the ebb and flow of the tide, was inapplicable to this country; that if the water was navigable, it was to be deemed' public; and if public, it was to be regarded as within the legitimate scope of the admiralty jurisdiction conferred by the constitution.
It was further declared, in that case, that the jurisdiction of the' courts of the United States could not be made to depend on regulations of commerce; that the judicial power and the power to regulate commerce were entirely distinct things, having no necessary connection with one another, and were conferred in the constitution-by separate and distinct grants.
That case arose under the act of 1845, and was of course governed by that act; but the principles declared in it have been subsequently followed by the Supreme Court of the United States; and the late decisions of that court on the subject of admiralty jurisdiction, in the cases of the Moses Taylor, the Hiñe, and the Belfast, seem to be the logical results of these principles.
In the case of the Moses Taylor, a proceeding in rern was instituted in the state court against the steamship Moses Taylor, employed in transporting passengers and freight between Panama and San Francisco, for a breach of contract with the plaintiff to furnish *530 proper food and conveniences during the voyage. The jurisdiction was maintained in the state courts under a statute of California, and judgment given against the vessel. The counsel for the defendant in error insisted in argument that the grant of admiralty 580] and maritime jurisdiction *lo the district courts was not exclusive, and is not prohibited to the state courts, and that the case came within the saving clause of the act of 1789; also, that if the constitution does not confer a jurisdiction exclusive, Congress can not make it so.
As to the last point, it was held that the judicial power of the United States is in some cases necessarily exclusive of all state authority, and in all others it may be made so at the election of Congress; and that the provision of the ninth section of the judiciary act, which vests in the district courts of the United States exclusive cognizance of civil causes of admiralty and maritime jurisdiction, is constitutional.
And it was also decided that the statute of California authorizing actions in rem against vessels for causes of action cognizable in admiralty, was an attempt, to that extent, to invest her state courts with admiralty jurisdiction, which, by the judiciary act of 1789, had been exclusively vested in the district courts of the United States; and that the clause in the ninth section, saving to suitors “ the right of a common-law remedy when the common law is competent to give it,” did not save a proceeding in rem as used in admiralty courts, such a proceeding not being a remedy afforded by the common law. 4 Wallace, 411.
The Hiñe v. Trevor was the case of a collision occurring on the Mississippi river, between the steamboat Hiñe and the steamboat Sunshine. The owners of the Sunshine instituted proceedings under the statute of Iowa, which is not materially variant from our own, against the Hine, to subject her to sale in satisfaction of the damages sustained by their vessel. Judgment against the boat having been affirmed by the Supreme Court of Iowa, the case was taken by writ of error to the Supreme Court of the United States.
The question made and argued was, how far the jurisdiction of the district courts of the United States, in cases of admiralty arising on our inland waters, was exclusive, and how far the state courts might exercise jurisdiction concurrently.
After an examination of the cases already decided, it was declared that the following propositions were clearly established:
*531, 532 *1. Tbe admiralty jurisdiction, to which the federal judici- [531 ary is by the constitution declared to extend, is not limited to tide-water, but covers the entire navigable waters of the United States.
2. The original jurisdiction in admiralty exercised by the district courts, by virtue of the act of 1789, is exclusive, not only of other federal courts, but of the state courts also.
3. The jurisdiction of admiralty causes arising on the interior waters of the United States, other than the lakes and their connecting waters, is conferred by the act of September 24,1789.
4. The admiralty jurisdiction exercised by the same courts, on the lakes and the waters connecting those lakes, is governed by the act of February 3, 1845.
And the principle decided in the case of the Moses Taylor was again affirmed and applied, that state statutes which attempt to confer upon state courts a remedy for marine torts and marine contracts, by proceedings strictly in rem, are void as to such attempt, except as to cases arising on the lakes and their connecting waters; and that such statutes do not come within the saving clause of the ninth section of the act of 1789, concerning a common-law remedy.
But it was further held that this rule does not prevent the seizure and sale, by the state courts, of the interest of the owner, ox-part owner, iix a vessel by attachment or by general execution, when the proceeding is a personal action against such ownex-, to recovera debt for which he is personally liable; nor to prevent any action which the common law gives for obtaining a judgment in personam against a pax-ty liable in a marine contract or a marine tort. 4 Wall. 556, 569.
These decisions have been followed by the court of appeals of New York in Bird et al. v. The Steamboat Josephine, 12 Tiffany, 19; the Supreme Court of Indiana in Bellard v. Wilshire, 28 Ind. 341: the court of appeals of Kentucky in Stewart, v. Harry, 3 Bush, 438; the Supreme Court of Louisiana in Berwin v. Steamship Matanzas et al., 19 La. Ann. 387 ; and their authority recognized by the Supreme Court of Illinois in Williamson v. Hogan, 46 Ill. 504.
The principle decided in the cases of the Moses Taylor and the *Hine again came under consideration in the case of the [532 Steamboat Belfast, 7 Wall. 625; and the unanimous judgment of *533 the court' was delivered by Mr. Justice Clifford in an elaborate opinion, in which the former rulings were distinctly affirmed.
That case arose tinder a statute of the State of Alabama. One of the questions was, whether a contract for the transportation of goods on the Tombigbee river, from one place to another in the same state, without being carried in transitu into or through any other state or foreign dominion, was a contract which could be enforced by a proceeding in admiralty in the federal courts alone. And it was held:
1. In all cases where a maritime lien arises, the original jurisdiction to enforce it by proceedings in rem is exclusive in the district courts of the United States, as provided by the ninth section of the judiciary act of 1789.
2. State legislatures have no authority to create maritime liens; nor can they confer jurisdiction upon a state court to enforce such a lien by a suit or proceeding in rem, as practiced in the admiralty courts.
3. Upon an ordinary contract of affreightment! the lien of the shipper is a maritime lien; and a proceeding in rem to enforce it is within the exclusive original cognizance of the district courts of the United States, albeit the contract be for transportation between ports and places within the same state, and all the parties be citizens of the same state, provided only that such contract be for transportation upon navigable waters to which the general jurisdiction of the admiralty extends.
The case arose under the act of 1789, and the above propositions are to be understood as applying to cases arising under that act, and not cases arising on the lakes and their connecting waters, and as to which any concurrent remedy given by state laws is saved to suitors by the act of 1845.
The same construction is given in this case to the saving clause in the ninth section of the act of 1789 as had been given in the previous cases, and in speaking of it in the opinion it is said: “ Properly construed, a party, under that provision, may proceed 538] in rem in admiralty, or he may bring *a suit in personam in the same jurisdiction, or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the state courts, or in the circuit court of the United States, if he can make proper parties to give that court jurisdiction of the case.”
In the proceeding now under review, the suit was brought upon *534 a contract to transport tbe plaintiff, a passenger, from Louisville to Cincinnati; and the next question is, whether this is a maritime contract, for the breach of which a lien on the vessel is given by the maritime law. This question arose in the case of the Moses Taylor, supra, and was distinctly ruled in the affirmative. The court there say: “ There is no distinction in principle between a contract of this character and a contract for the transportation of merchandize. The same liability attaches upon their execution, both to the owner and the ship. The passage money in the one case is equivalent to the freight money in the other. A breach of either contract is the appropriate subject of admiralty jurisdiction.” See also Steamboat H. M. Wright, 1 Newb. 407; 2 Pars. Maritime Law, 510, note 3.
The remaining question is, whether the objection to the jurisdiction was waived by a failure to set it up by plea.
This is not a case whore the court has jurisdiction of the subject-matter of the suit by law, but the defendant is exempt from being required to submit to the jurisdiction of the court. In such ease, the exemption pertains to the defendant as a personal privilege which he may waive. In this case, the want of jurisdiction grows out of the subject-matter of the suit. And where it appears upon the face of the record that the court has no jurisdiction of the cause, as it does here, the failure to set up the want of jurisdiction by plea is no waiver of the objection.
It follows that the judgment of the court below must be reversed; and the cause is remanded, with directions to dismiss the suit for want of jurisdiction.
Day, C. J., and Scott and Welch, JJ., concurred.
Brinkerhoff, J., dissented.