HON. CHARLES W. WHIPPLE, C. J.
HON. WARNER WING,
HON. GEORGE MILES,
HON. SANFORD M. GREEN,    } JUSTICES.
HON. EDWARD MUNDY,

———————ooOoo———————

## ROBINSON v. STEAM BOAT RED JACKET.

The act to provide for the collection of demands against boats and vessels, Ses. L. 1839, p. 70, gave a new and cumulative remedy, but did not give a lien on the vessel itself until taken on the attachment; and the remedy given by that act was not reserved by sec. 2, ch. 173, R. S., (which chapter repealed the act,) to a party whose proceedings were not instituted under the act before its repeal— such remedy not being a *right accrued* within the meaning of these words as used in that section.

CASE reserved from Wayne Circuit Court. Proceedings by attachment, under the act to provide for the collection of demands against boats and vessels, approved April 10th, 1839, Ses. L. 1839, p. 70. The complaint was filed on 26th October, 1847, and charged the injury to have been committed on the 13th November, 1846. The act under which the proceedings were instituted, was repealed by ch. 173, R. S., which took effect 1st March, 1847. The defendant demurred, and the questions raised by the pleadings were reserved by the circuit court for the opinion of this court.

*Fraser and Romeyn,* for plaintiff.

*Van Dyke and Emmons,* for defendant.

*By the court*, WHIPPLE, C. J.    On the 26th October, 1847, the complainant filed his complaint under the fourth subdivision of section 1 of the act entitled "An act to provide for the collection of demands against boats and vessels," Ses. L. *1839*, p. 70.

That section, among other things, provides, "that every boat or vessel used in navigating the waters of this state, shall be liable for all injuries done to persons or property by such boat or vessel, in all instances where the same is shown to have occurred through the negligence or misconduct of the master or hands thereon employed." The second section provides, that any person having a demand arising under the provisions of the first section, instead of proceeding for the recovery thereof against the master, owner or consignee of a boat or vessel, may, at his option, institute suit against such boat or vessel by name. The third section provides, that the complaint shall be filed with the clerk of the circuit court of the county in which such boat or vessel may be found. The fourth section requires, that the complaint should state the particulars of the plaintiff's demand, and that it should be verified by affidavit. The 5th section provides, that upon filing the complaint, the clerk shall issue a writ of attachment directing the sheriff to seize the boat or vessel, and detain the same in his custody until discharged by due course of law. The sixth section directs, that subsequent proceedings shall be had in the manner, as near as may be, as if suit had been instituted by summons against the person, &c.

The remedy provided by the act is merely cumulative; that furnished by the common law proved ineffectual in many instances, from the difficulty of discovering or reaching those upon whom the law imposes a liability for the causes specified in the act. This, with other reasons, suggested a new and more efficient remedy by which rights could be successfully enforced. No *specific lien* is created by the statute until the attachment is actually served. The first section, it is true, declares the boat or vessel liable in certain cases; but this section, when construed with reference to other sections of the same law, shows how this liability is to be enforced. The remedy which the statute provides would have been quite as effectual if the words which declare boats and vessels *liable* had been omitted. It is said, in the case of the Steam Boat Monarch *v*. Finley, 10 Ohio 384, that "this law gives a lien upon such crafts for certain claims against them." As this question did not necessarily

arise in that case, the decision of the supreme court of Ohio is not entitled to that respect which we should have felt bound to give to it had the question been directly presented for its determination. Assuming, however, that the decision was deliberately made, it detracts much from its weight that the same court should have subsequently declared that the liability of the boat or vessel " is not in the nature of a lien." The Huron v. Simmons, 11 Ohio 458. And in a case in 14 Ohio 72, the court affirm that a lien, in a technical sense, is not created, but that " it is something which appropriates the property as effectually, if not more so, than ordinary liens." The adjudications in Ohio do not appear to be consistent on the question as to whether, upon the accruing of a cause of action contemplated by the first section of our act, a lien at once attaches. These cases do not profess to discuss the question; and no decision which can be regarded as authoritative and binding upon the courts of that state, is to be found until the judgment of the supreme court was pronounced in the case of Jones & Watkins v. The Steam Boat Commerce, 14 Ohio 408. This case determines, " that the first section of the act does not create a lien. It merely declares a liability, leaving the mode of enforcing it to the provisions made in the four next succeeding sections." These views are in precise accordance with those expressed by this court at the January term, 1842, in the case of Moses v. The Steam Boat Missouri.* We have examined the opinion in that case, and see no reason why it should not be deemed a sound and correct exposition of the statute. We, therefore, take occasion now to re-affirm the doctrines of that case.

The learned counsel for the plaintiff was not advised, until the argument of the case, that a construction had been given to the statute in question by this court—the opinion never having been published. Had the fact of its promulgation been known, it must have narrowed a discussion which assumed a wider range in consequence of the prominence given to a question which it was supposed had not been judicially determined. If a lien was, in point of law, created at the time the cause of action is alleged to have accrued, the argument of counsel, and the authorities cited in their support, would have demanded the greatest attention, and would, perhaps, have authorized us to sustain the complaint on the ground that a right had accrued within the meaning of

---

*For this case see Appendix.

the saving clause of the general repealing statute of 1846. As a lien did not attach, we are now to consider whether the complaint can be sustained upon other grounds.

The act of 1839 is repealed by chapter 173 of the revision of 1846; but it is declared that such repeal " shall not affect any act done, or right accrued or established, or any proceeding, suit or prosecution had or commenced in any civil case previous to the time when such repeal shall take effect; but every such act, right and proceeding shall remain as valid and effectual as if the provision so repealed had remained in force."

It is contended that *a right having accrued* to the plaintiff, the proceedings were properly instituted under the act of 1839. The complaint was filed on the 26th October, 1847; the injury complained of, and which constitutes the cause of action, is alleged to have occurred on the 13th November, 1846. The repealing statute was approved May 18, 1846, and took effect March 1, 1847. The cause of action, then accrued while the act of 1839 was in force; the complaint, however, was not filed until after that act was repealed, although more than three months intervened between the time when the cause of action accrued and the repeal of the act of 1839.

I have said, that the act of 1839 gave a new and cumulative remedy in certain cases therein specified. Instead of confining the party injured by the collision complained of, to the common law remedy by action on the case, it authorized a proceeding, differing in point of form, though intended to accomplish the same object—redress the injury. The *essential* difference between the two modes of proceeding consists in this, that after service of the attachment a specific lien is acquired, and the boat is liable to be sold to satisfy any judgment that may be rendered in favor of the plaintiff; while by the old remedy, no such lien could be acquired until *after* judgment and levy of execution. The practical questions, then, to be determined, are: whether the right to institute proceedings under the act of 1839, notwithstanding its repeal, is saved by the second section of chapter 173 of the revision of 1846; and if not thus saved, whether the repeal of the act is not inoperative and void, so far as it purports to deprive the plaintiff of the remedy the act of 1839 provides for enforcing claims arising under it.

The consideration of these questions involves the distinction so often

referred to in adjudged cases, between the right and the remedy. So close is the connection between what is denominated the *right* and what the *remedy*, that it is often difficult to draw the line which divides the one from the other. No right can, in *legal contemplation*, be said to exist, unless there be a remedy by which it may be enforced. Do the words "*right accrued*," secure to the plaintiff the right to proceed under the act of 1839, to enforce a cause of action accruing while that act was in force? That the legislature did not so intend, is, I think, very clear, whether we consider the import of those words in connection with, or disconnected from other words in the same section.

We have said that the act of 1839 gave a new remedy for the wrong of which the plaintiff complains; he might, however, waive his right to proceed under that act, and avail himself of the old remedy. But it has been determined that under the act of 1839, no lien was created until the actual service of the attachment; how, then, can it be said that a "*right accrued*," when the plaintiff did not institute proceedings until the act was repealed. Had the complaint been filed and the attachment served before the repeal, the specific lien which would have been thus acquired would, perhaps, have been such a *right* as the statute intended to preserve. It will not and cannot be contended that those words are so comprehensive as to embrace the right to sue in a particular form. If the mode of proceeding given by the act of 1839, excluded every other remedy for a redress of the injury, and that act had been repealed without securing to the plaintiff a reasonable remedy for a pre-existing right of action, then, perhaps, the arguments of counsel might hold good: for the *right of action* which had *accrued* being saved, would, by fair implication, include the *remedy*, without which the *right* saved could not be saved. In other words, we would not attribute to the legislature the folly of saving a *right*, and at the same instant of extinguishing the only *remedy* by which it could be enforced. But the legislature allowed the plaintiff more than three months after the act passed and before it took effect, to avail himself of the particular remedy which that act gave—after which he was remitted to the remedy secured to him by the common law. But the construction for which I contend is supported by the context. It is declared by the second section, that the repeal should not affect " any proceeding, suit, or prosecution had or commenced in any civil case, previous to the time when

such repeal shall take effect;" and the fourth section saves all prosecutions for offences committed, and for the recovery of forfeitures and penalties. Why should these provisions have been deemed necessary, if the same object had been attained by the general saving clause so strongly relied on by the counsel for the plaintiff? If it did not embrace the class of cases specially enumerated, how can it be argued that it embraces suits not pending at the date of the repeal? The saving clauses contained in our general repealing statute were borrowed from New York, and the words "right accrued or established," have received a judicial construction in the courts of that state. In the case of The People *v.* Livingston, 6 Wendell 526, Mr. Justice Savage, in commenting upon the saving clause of the second section of our general repealing act, uses this language: "It cannot be denied that the legislature possesses the power to take away by statute what was given by statute, except vested rights. As it is undoubtedly competent for the legislature to repeal absolutely, so it is competent, notwithstanding the repeal, to continue the old law in force as to the proceedings commenced under it, to substitute another law in place of the old one, and to direct that all future proceedings in the progress of a cause or the prosecution of a right, shall be governed by such new law." And again: "It seems to me to have been the intention of the legislature *to confirm all rights which had accrued*—to be enforced, however, according to the new remedy." These views were recognized and adopted in subsequent adjudications in that state. In the case of Bickford *v.* Boston and Lowell R. R. Co., 21 Pick. 109, the construction of the saving clauses in the Massachusetts Revised Statutes was called in question. In delivering the opinion of the court, Ch. J. Shaw declared, that "the purpose of the statute was to confirm existing rights." These cases I will not analyze: but they all show very conclusively that the *rights* contemplated by the statute were such as were fixed and established, and not merely incohate and contingent. It is admitted that the grant or confirmation of a right will unquestionably carry with it, as an incident, the means necessary to its enjoyment. If, then, the object and intent of the provision which continues in force rights accrued or established, could not be carried into effect without preserving the old remedy, we would so construe the provision as to preserve that remedy.

In the case before us the right of action was preserved, notwithstand-

ing the repeal of the act of 1839. The remedy by attachment, however, was repealed, and the plaintiff was necessarily remitted to that provided by the common law. The question as to whether it would prove as efficient or convenient, it is not necessary to consider.

If, then, the remedy provided by the act of 1839 for redressing the wrong of which the plaintiff complains, was not preserved by the saving clause of the general repealing statute, I am at a loss to determine how the plaintiff can avail himself of the remedy, upon any reasoning to be deduced from the constitution, or from any principle of general jurisprudence with which I am familiar. The arguments of counsel, and the array of authorities by which those arguments were fortified, were and must have been founded on the idea *that the act of* 1839 *created a lien.* But I have endeavored to show *that no lien attached* until a complaint was filed and an attachment actually levied. If so, those arguments, forcible as they might have been when applied to a state of facts like those assumed by counsel, can have no force, and the authorities cited no pertinency, when applied to a state of facts so essentially different from those assumed. The repeal of the act of 1839 violated no *vested* right, unless it can be maintained that the plaintiff had a right to the particular remedy which that act provided for the several causes of action specified in the first section. To maintain such a proposition, would be pushing the doctrine of vested rights further than it has been carried by any adjudication which has been or can be cited.

The power of the legislature to repeal existing remedies is unquestioned, unless such repeal violate rights protected by the constitution. If the effect of a repeal or modification of an existing remedy be to impair the obligation of a contract, it would be declared void, although it did not profess to act directly upon the contract. There are cases which would seem to imply that the federal and state constitutions do not contain the only limitations upon legislative power, and that acts which do not violate either may, nevertheless, be declared inoperative. I will not stop to discuss such a proposition, because it does not arise in the case before us. It may, however, be asserted that courts would find some difficulty in declaring any act of the legislature void, upon any general notion that it violated a great principle of right or of general jurisprudence. Courts have said and might again say, that they will not

so construe an act of the legislature as that it shall work injustice, or impair vested rights; they will not intend that the legislature meant, under the forms of law, to do that which is repugnant to reason or justice. But I know of no limitations upon the legislative authority but such as are prescribed by the constitution. The judiciary are armed with all the power necessary to protect the citizen in his rights, without resorting to any of the doubtful powers which have existed in the imaginations of judges, but which have no real foundation in fact.

In the case before us, the plaintiff brings an action for a *tort;* the form of remedy he has adopted would have been justified had the act of 1839 not been repealed by the revised statutes of 1846; as it was repealed, and there is no provision in the repealing clause saving to the plaintiff the particular form of remedy prescribed by the act of 1839, although the cause of action accrued while that act was in force, it follows that the demurrer must be sustained.

*Certified accordingly.*