# BARQUE "GREAT WEST NO. 2"

*v.*

# LOUIS OBERNDORF *et al.*

1. ATTACHMENT OF BOATS AND VESSELS, *under act of* 1857—*when the lien accrues.* Under the act of February 16th, 1857, relative to the liability of vessels for debts contracted on account thereof, there exists a lien on such vessels in favor of the material-men for the supplies furnished, from the moment the liability therefor is incurred. Such lien is acquired by force of the statute, and not by virtue of the levy and seizure under the attachment warrant, which is the remedy provided for the enforcement of the lien, and does not create the lien.

2. SAME—*of the priorities of liens, and time of enforcing them.* The act of 1857 must be construed in connection with the act of 1845, to which it is an amendment, and which expressly provides, that such debts shall have the preference of all other debts due from the owners or proprietors of boats and vessels of all descriptions    *    *    *    running upon any of the navigable waters within the jurisdiction of this State, excepting the wages of mariners, etc., which are to be first paid; and in connection with the act of 1855, which extends the time for enforcing such liens as against other creditors, or subsequent incumbrancers, and bona fide purchasers, from three to nine months.

3. But such liens can not take priority over previous incumbrances, such as judgments and mortgages, but can only prevail as against debts and demands for which there exists no prior lien.

4. FORMER DECISIONS. The cases of *Williamson* v. *Hogan*, 46 Ill. 504, and *The Tug Montauk* v. *Walker & Co.*, 47 Ill. 335, so far as they hold that, under the act of 1857, no lien is expressly created against vessels by the contract for furnishing supplies, and in furnishing them, are overruled.

APPEAL from the Superior Court of Chicago; the ·Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Messrs. RAE & MITCHELL, and Messrs. KING, SCOTT & PAYSON, for the appellant.

Messrs. MILLER, VANARMAN & LEWIS, and Messrs. HOYNE, HORTON & HOYNE, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from the Superior Court of Chicago. The cause was before that court at the April term, 1870, on the following agreed facts:

It is stipulated in the above entitled causes, that the Barque Great West No. 2, was at the time the causes of action respectively arose, owned by Edward McDonald, and William H. McDonald, who resided in the City of Chicago; that the vessel was at the time a vessel running upon the navigable waters of the State of Illinois, and engaged in commerce between the port of Chicago and ports in other States on the lakes, and that the labor, materials and supplies mentioned in said accounts were furnished by order of the owner or master of the barque, and that the prices are just and correct, and that said supplies were furnished said vessel while in Chicago river, and were consumed on said vessel while she was engaged in commerce between the port of Chicago, and ports in other States on the lakes; that the account of Oberndorf &

170        GREAT WEST NO. 2 *v.* OBERNDORF *et al.* [Sept. T.,

Opinion of the Court.

Co. commenced on the 16th day of March, 1868, and ended on the 26th day of July, 1869, and amounts to the sum of $298.68; that the account of Doolittle & Bates commenced on the 14th day of July, 1868, and ended on the 10th day of April, 1869, and amounted to the sum of $109.38; that the account of Purrington & Scranton commenced on the sixth day of March, 1868, and ended on the 28th day of July, 1869, and amounted to the sum of $787.97; that the account of Gottleib Schlect commenced on the 4th day of April, 1868, and ended on the 9th day of November, 1868, and amounts to the sum of $218.71.

It is further stipulated, that before and at the time of furnishing said labor, materials and supplies, said barque was mortgaged for the sum of $14,000, to James E. King, and Edwin L. Jillett, which mortgage was recorded on the 5th day of March, A. D., 1868, at the collector's office in the port of Chicago, and not elsewhere, the place where the vessel belonged and was enrolled and licensed, a copy of which mortgage is hereto attached. That on the 27th day of July, 1869, the mortgagors having made default in the payment and failed to perform the conditions and covenants in said mortgage on their part, the mortgagees took possession of said vessel, and after advertising her for sale for the time required by said mortgage, to wit: thirty days, sold the said vessel in pursuance of said notice, at public auction, to Samuel S. Slater, who was the highest bidder therefor, for the sum of $5,000, the amount due and unpaid on said mortgage, being at that time about the sum of five thousand five hundred dollars.

Said attachment suits were commenced under the act known as the Water Craft Act, by the said plaintiff, on the 3d day of September, 1869.

QUESTIONS TO BE SUBMITTED TO THE COURT UNDER THIS STIPULATION.

*First*—Whether said claims upon which said attachment suits are brought, are liens upon the vessel, according to the laws of the State of Illinois?

*Second*—If they are liens, whether they are superior or subject to said mortgage.

It was further stipulated that the above stipulation should stand and take the place of pleadings, and that no further pleadings need be filed in the attachment suits, but the same should be deemed as fully at issue as if the facts therein had been pleaded in legal form, and issue joined.

The superior court decided that the attachment suits were liens upon the vessel, and overrode the lien of the mortgage. This is assigned as error.

Appellant makes several points ; the first of which is, that whatever rights these creditors may have had they have lost by their delay ; that they have permitted the vessel to make several voyages since a large part of the supplies were furnished.

There is no evidence to this point in the record, nor is it embraced in the stipulation, consequently it can not be considered.

The next point made is, that it does not appear that the several debts sued on, or any of them, were contracted "for materials, supplies, or labor in building, repairing, furnishing or equipping the vessel, or due for wharfage."

The statute of 1857 provides (section 1) that steam boats, and other water crafts navigating the rivers within or bordering upon this state, shall be liable for debts contracted on account thereof by the master, owner, steward, consignee or agent, for materials, supplies, or labor in building, repairing, furnishing or equipping the same, or due for wharfage." Scates' Comp. 789.

It appears to us, under this stipulation, the question of jurisdiction is not properly before us. Had there been pleadings in the cause, and they lacked those averments we deemed necessary in the case of *Williamson* v. *Hogan,* 46 Ill. 508, they would, of course, on the authority of that case, and the subsequent case of the *Tug Montauk* v. *Walker & Co.,* 47 Ill. 335, be adjudged defective, but by the stipulation it is very evident

all the facts necessary to give the court jurisdiction were considered as existing, and but two questions submitted: first, whether the claims are liens, and second, if so, have they priority over the mortgage? The question of jurisdiction we do not consider as before us by the stipulation.

Upon the point, were these claims liens :

It was said in *Williamson* v. *Hogan*, 46 Ill. 518, that as this act does not expressly create a lien, it would follow, a court of admiralty had no jurisdiction, and consequently the case was within the jurisdiction of the State court, for there must be a remedy somewhere, and the act of 1857 was passed to give one of a summary character, and the same language was repeated in the *Tug Montauk* v. *Walker*, 47 Ill. 335. On further reflection, we are satisfied the act of 1857 should be construed with the act of 1845, to which it is an amendment, and in which it is expressly provided that such debts shall have the preference of all other debts due from the owners or proprietors of boats and vessels of all descriptions, built, repaired or equipped, or running upon any of the navigable waters within the jurisdiction of this State, except the wages of mariners, boatmen and others, employed in the service of such boats and vessels, which shall be first paid. By section six of this act, this "lien," as against other creditors and subsequent incumbrancers, or *bona fide* purchasers was lost, unless a suit to enforce it was brought within three months after the indebtedness accrued or became due, according to the terms of the contract. This time was extended by the act of February 9, 1855, to nine months.

These several statutes being *in pari materia*, that of 1857, under which the proceedings in the case cited were had, repealing no single provision of the others, must be construed together, and so construing them, a lien did in fact exist, and should have been so declared. In this case we must consider them as one and the same act, and must hold, on the authority of the case of *Germain* v. *The Steam Tug Indiana*, 11 Ill. 535, that a lien was created by the provisions of these acts in

favor of these material men, and that it attached the moment the several liabilties were incurred. Such lien was acquired by force of the statute, and not by virtue of the levy and seizure under the warrants. They are the remedy prescribed for the enforcement of the lien, and do not create the lien.

No reference was made to this case, when the other cases were before us, nor is there now, but it has come to our notice in the necessary examination of authorities, and we must take it as our guide, satisfied, on reflection, it is the proper view of the statute, and that the act of 1857 must be considered in connection with that of 1845 and that of 1855, passed on the same subject, to which we have referred.

The remaining question is free from difficulty. The act of Congress providing for recording mortgages of vessels, is as follows: "No bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person, other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage etc., be recorded in the office of the collector of the customs where such vessel is registered or enrolled ; *Provided,* that the lien by bottomry on any vessel during her voyage, by a loan of money or materials necessary to repair or enable such vessel to promote a voyage, shall not lose its priority, or be in any way affected by the provisions of this act." The second section requires the collectors of customs to record all such mortgages, and all certificates for discharging and cancelling them in a book to be kept for that purpose. Section third requires them to keep an alphabetical index of such records, and of the vendee or mortgagee, and all to be subject to inspection during office hours, and shall, by section four, furnish certified copies of such records on the receipt of fifty cents for each mortgage.

The act of 1845 provides, in express terms, that such debts shall have the preference of all other debts, due from the owners or proprietors of a vessel, except the wages of mariners, etc., which shall be first paid. What is meant by this provision?

Was it designed to cut off judgments and mortgages, or only debts and demands for which there should be no prior lien? We think the latter only. And this seems to have been the opinion of the court in the case cited from 11th Ill., for there it is said that the remedy prescribed by the statute, which, although in some respects is a proceeding *in rem*, has not the conclusive effect of an admiralty decree. The court say, the fact that the legislature has provided a different remedy (from the one in admiralty), excludes any conclusion that it designed either to adopt the maritime remedy, or the consequences resulting therefrom ; that under the statute, each lien holder must institute a distinct proceeding in order to enforce his lien ; they are not even required to pursue their remedies before the same tribunal—one of them can not appear in a suit commenced by another, and assert his claim against the vessel. The court in which different actions may be pending against the same vessel, has no authority to consolidate them, but each progresses as an independent proceeding. It has no power to bring before it the various parties in interest, and, after ascertaining their respective rights, direct a sale of the vessel, and a distribution of the proceeds among them. It can only enter a judgment in favor of each attaching creditor, and award an execution for the sale thereof. The surplus, after the satisfaction of the particular judgment, would go to the owner of the vessel, without reference to existing liens. The purchaser takes the vessel subject to every subsisting lien of a superior class, and to those of the same class originating prior to the one on which the attachment was founded.

Finally, the court say, the sale of a vessel under a judgment in attachment obtained by a seaman or material-man, does not divest any liens of a superior degree, nor any antecedent liens of the same degree.

Were these proceedings against this vessel in an admiralty court, under the maritime law, where all persons interested have a right to appear, and are solemnly admonished to appear and protect their interests, liens of a superior degree, and

antecedent liens of the same degree, would undoubtedly be cut off, but, as this court said, it is contrary to justice and equity to divest a man of his rights by a proceeding to which he is not a party, and in which he can not appear and defend them.

It is settled doctrine, that an attaching creditor or judgment creditor can not acquire any interest or right in the property seized against the interests of a *bona fide* lien holder, such lien being prior in time to the levy of the attachment or rendition of the judgment.

The record of the mortgage on this vessel was notice to all the world, and these claimants are bound by it. It is prior in time to their claims, and must prevail against them.

We have been referred to some cases not harmonizing with each other, which we do not think it is necessary to comment upon, as our opinion is based upon the case cited, believing this case is fully within the principles therein announced.

We therefore answer the second question in favor of the mortgage. The lien created by that must prevail over that of the material-men, and this reverses the judgment of the superior court.

The judgment is reversed and the cause remanded.

*Judgment reversed.*