THEODORE KORNER, The (KENDEPT v.).
See Case No. 7,693.

---

# Case No. 13,879.

## The THEODORE PERRY.

[18 Cent. Law J. 191.] [1]

District Court, E. D. Michigan. Feb. 1878.

MARITIME LIENS—STATUTE—REPAIRS—WAIVER—LACHES.

1. Under a state statute declaring that certain vessels "shall be subject to a lien" for repairs, materials. etc., such lien dates from the time the repairs are furnished, and not from the time the vessel is seized.

2. Though a lien for repairs is presumed to be waived by taking a mortgage upon real estate, parol evidence is admissible to show that the mortgage was received as collateral security, and with no intention of waiving the lien.

3. Where a mortgage is received simply as collateral security and not as conditional payment, it does not operate to extend the time for payment of the original debt, notwithstanding the mortgage itself is made payable at a distant day.

4. A lien for repairs furnished in the home port is entitled to be paid in preference to a subsequent mortgage.

[Cited in The Illinois, Case No. 7.005.]

5. A lien for repairs may be enforced, notwithstanding the bond and mortgage given to secure it are not tendered back to the mortgagor, or surrendered in court at the trial.

[Cited in The Alliance, 64 Fed. 873.]

6. The lien of a material man must be promptly enforced as against a subsequent mortgagee, though the claim had not become stale at the time the mortgage was given. Maritime liens are not pronounced stale solely upon the principle of estoppel. The lien holder is bound to diligence in the enforcement of his right, notwithstanding the mortgagee may not have suffered directly by the delay.

[Cited in The General Burnside, 3 Fed. 230; The Robert Gaskin, 9 Fed. 64; The C. N. Johnson, 19 Fed. 785.]

On motion for distribution of proceeds.

The schooner Theodore Perry, having been libeled by a large number of parties, was sold pendente lite, on the 16th day of September, 1875, and the proceeds paid into court. Among these libels were: First, by the Detroit Dry Dock Company, for repairs furnished at Detroit, the home-port of the vessel, in July, 1874, to the amount of $2,738 26. It appears that to secure this claim William Stewart, owner of the schooner, and Hannah Stewart his wife, on the 7th of June, 1875, nearly a year after the claim accrued, executed to the dry dock company a mortgage payable in installments of one, two and three years upon certain real estate in Detroit, belonging to Hannah Stewart, the wife. Accompanying this mortgage was the individual bond of William Stewart for the amount of the bill. Second, a libel of Edward Mayes, for supplies furnished the schooner at her home-port in June, July, August and September, 1874, in the amount of $265 21, for which decree has been entered up. Third, a libel of William Smith, for supplies furnished at the home-port, for which a decree has also been rendered. Fourth, a libel of the Orient Mutual Insurance Company, for premiums upon policies of insurance issued on the first day of August, 1875, the amount due being $351. Fifth, on the 12th of October, 1875, Hugh Coyne filed his petition, praying payment from the proceeds of the sale of the vessel of a certain mortgage of indemnity executed to him on the 4th day of October, 1875, upon which there is due about $3,455, amounts which Coyne had been compelled to pay by reason of indorsements for Stewart.

J. J. Speed and D. B. Duffield, for Dry Dock Company.

L. S. Trowbridge, for Mayes.

Mr. Atkinson, for Orient Mutual Insurance Company.

F. H. Canfield, for mortgagee.

BROWN, District Judge. Most of the questions relative to admiralty jurisdiction and the marshaling of liens, have been so frequently discussed, and the conclusions reached so diametrically opposed to each other, that I feel reluctant to add another to the mass of adjudications which have served hitherto less to settle the law than to impair, in the minds of the profession, the value of all judicial precedents. As two lawyers can rarely be found to agree upon questions touching at all upon admiralty jurisdiction, it is hopeless for an inferior court to attempt to establish a precedent; it can only follow, as nearly as possible, the latest adjudications of the supreme court, decreeing whatever seems just in the particular case.

The first and most important question at issue relates to the relative priority of the claim of the Detroit Dry Dock Company and the mortgage of Hugh Coyne. A lien enforceable in this court is claimed to exist in favor of the dry dock company, by virtue of section 6648 of the compiled laws of this state, which enacts that "every water craft

---

[1] [Reprinted by permission.]

above five tons burthen, used or intended to be used in navigating the waters of this state, shall be subject to a lien thereon; first, for all debts contracted by the owner or part owner, master, clerk, agent, or steward on such craft, on account of supplies and provisions furnished for the use of said water craft * * * on account of work done or materials furnished by mechanics, tradesmen or others, in or about the building, repairing, fitting, furnishing or equipping such craft. It seems now to be settled by the supreme court, in the late case of The Lotawana, 21 Wall. [88 U. S.] 579, that liens created by state laws for necessaries, which by the law maritime are cognizable in personam, may be enforced in the admiralty courts. As observed by the supreme court in that case, "it seems to be settled in our jurisprudence, that so long as congress does not interpose to regulate the subject, the rights of material men furnishing necessaries to a vessel in her home port, may be regulated in each state by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract; and they cannot alter the limits of that jurisdiction; nor can they confer it upon the state courts so as to enable them to proceed in rem for the enforcement of liens created by such state laws, for it is exclusively conferred upon the district courts of the United States. * * * But the district courts of the United States, having jurisdiction of the contract as a maritime one, only enforce liens given for its security even when created by the state laws."

Although the point was not made upon the argument. I see no reason to doubt that the lien created by this act attaches when the supplies are furnished. In the case of Germain v. The Indiana, 11 Ill. 535, it was held that, under the water craft law of Illinois, which provided that the vessel "should be liable for all debts," &c., "and that no creditor should be allowed to enforce the lien created under provisions of this chapter. unless," &c., that the act created a lien which attached the moment the liability was incurred. A different construction was given to the act of 1857 [Laws (Ill.) 1857, p. 52], in the case of Williamson v. Hogan, 46 Ill. 518. and The Montauk v. Walker, 47 Ill. 335. But these cases were expressly overruled by that of The Great West, No. 2, 57 Ill. 168, in which the court held, under a similar statute, that the lien was created by force of the statute, and not by virtue of the levy and seizure upon the attachment. Under the former water craft law of this state which provided that the vessel "should be liable," &c., it was held in the case of Robinson v. The Red Jacket. 1 Mich. 171, that no lien was created until attachment. Following the case of The Huron v. Simmons, 11 Ohio, 458, and Jones v. The Commerce, 14 Ohio, 408, that a lien was created by the Wisconsin statute was decided in the case of McRoberts v. The Henry Clay, 17 Wis. 101, and by the New York statute in the case of Veltman v. Thompson, 3 N. Y. 438. This latter statute provided that whenever a debt amounting to fifty dollars or upwards. should be contracted in the manner therein specified, such debt should be a lien. I think a distinction may be taken between cases where the statute declares the vessel "shall be liable" and those which declare they "shall be subject to a lien." In the one class the lien may be properly said to arise from the seizure, in the other from the contract itself. I see no reason in this case why a lien did not arise in favor of the dry dock company from the time the repairs were put upon the schooner, which it was at liberty to enforce, at any time. by proper proceedings in this court.

It is not disputed that the mortgage to Coyne, recorded under the act of congress. also created a lien, notwithstanding it was a mortgage of indemnity. But it is insisted that Coyne had notice of the claim of the dry dock company, and that its lien as against him was not waived, and did not become stale by its failure to institute proceedings within the year provided by section 6690. The testimony on this point is somewhat conflicting, but I think there is sufficient to show that Coyne is chargeable with notice of the claim of the dry dock company. He admits himself, that he was informed by Stewart sometime during the summer preceding his mortgage, that the dry dock company had repaired his vessel, and that its claim was unpaid. Stewart himself swears specifically that Coyne knew of the claim; that he told him of it as soon as the repairs had been put upon the vessel; that he thought the bill was high, and had frequently talked it over with him; that he told him the amount was thirty-three hundred dollars, and that he mentioned the matter to him two or three times, once in Mr. Parson's office. I see no reason to discredit this testimony. Indeed, I can hardly believe that Coyne, occupying the somewhat confidential relation of endorser to Stewart, and depending upon this vessel for his security. should not have had knowledge of this incumbrance, and taken his mortgage in contemplation of it. I must hold, therefore, that he is chargeable with notice, and does not stand in the position of a bona fide purchaser.

Was the lien of the dry dock company waived by taking the mortgage of June 7th, 1875, from William and Hannah Stewart, upon the real estate of the latter, together with the bond of William Stewart for the payment of his claim? While, without explanation, a waiver might be presumed from taking a distinct collateral security. it was held by the circuit judge in the Case of Hurst [Case No. 6,925], that the

question of payment (and. consequently of waiver) was always one of intent; and in a case where a resolution of composition had been adopted by which the creditors agreed to accept the sum of twenty cents on the dollar, "in full satisfaction and discharge," it might be explained by showing that the notes provided for were not intended to be received in payment or satisfaction of the original claim. A large number of authorities are cited in the opinion, not necessary here to be repeated. The testimony upon this point shows clearly that as between the dry dock company and Stewart, no waiver of its claim against the vessel was intended by taking the mortgage upon the real estate. Not only does Mr. Stewart admit it, but Mr. Toms, the attorney for the dry dock company, who drew the mortgage, and Mr. McVittie, the secretary of the company, swear unequivocally that it was taken as collateral. Being taken then simply as collateral security, and not as conditional payment, it does not even extend the time for payment of the original debt for the one, two, and three years provided by the mortgage. U. S. v. Hodge, 5 How. [46 U. S.] 282; The Maggie Jones [Case No. 8,947]; Austin v. Curtis, 31 Vt. 64.

Under the facts exhibited in this case, which is entitled to priority of payment, the material man for the repairs furnished in the home-port, or the mortgagee? As a general rule, I should say without hesitation, the material man should rank a subsequent mortgagee. He has put repairs upon the ship which have largely added to its value in the hands of the mortgagee, and it is no more than just that the latter should take it with the burden thus imposed upon it. Indeed, if the material man has any lien at all, it would be grossly unjust to permit it to be defeated by a mortgage placed upon the ship the next day, possibly for the very purpose of preferring some other creditor and defrauding him. Again, the work done by him either adds to the value of the vessel, or puts her in a condition for the work she is about to engage in, while the mortgage may be given for a consideration wholly unconnected with the vessel. In this light I regard the lien as, prima facie, much more meritorious than the mortgage. I lay no stress whatever upon the fact that the lien is created by the state law, while the mortgage is recorded under the act of congress. Mortgages upon vessels were valid long before the recording act was passed, although filed under state laws. The act was not designed to add a particle to their value as security, except so far as it might incidentally do so in providing a convenient place for recording them, and making the record notice to subsequent purchasers and incumbrancers. The case of White's Bank v. Smith, 7 Wall. [74 U. S.] 646, merely held that a mortgage recorded under the act of congress was notice to subsequent purchas-

ers, though not filed or recorded under the state law, making all mortgages of chattels constructive notice only when recorded in the town in which the mortgagor resided. This view of the relative priority of the material man and mortgagee was apparently taken by the learned judge of the Western district, in the case of The St. Joseph [Case No. 12,229], and again in The Alice Getty [Id. 193], in which he held that material men, having liens by local laws, have priority even over prior mortgagees. Although a different view was taken by Judges Drummond and Blodgett in the cases of The Grace Greenwood [Id. 5,652], The Skylark [Id. 12,928], and The Kate Hinchman [Cases Nos. 7,620, 7,621], there is nothing in these opinions which necessarily conflicts with the position here assumed, as the mortgages in all these cases were prior in date to the lien of the material men. In Scott's Cases [Case No. 12,522], the mortgages also ranked the lien of the material man in point of time, and were accorded priority solely upon that ground. But whatever be the rule in the Seventh circuit, I think a decided preponderance of authority accords a preference to a domestic material man, at least as against a subsequent mortgagee. See The Wm. T. Graves [Id. 17,758], decided by Wallace. J.; The Bradich Johnson [Id. 1,770]; The Alice Getty [supra]; Francis v. The Harrison [Case No. 5,038]; The Granite State [Id. 5,687]; Donnell v. The Starlight, 103 Mass. 227; The Norfolk, Case No. 10,297. The law of this state, under which the material man is entitled to a lien, in express terms accords him priority over mortgages both prior and subsequent. Com. Laws, §§ 6678, 6679. I hold, therefore, the lien of the dry dock company is entitled to rank that of the mortgagee.

Further objection is made by the counsel for the mortgagee, that the lien in this case cannot be enforced because the bond and mortgage have not been surrendered or delivered up by the libelants or tendered in court. Relying upon the cases of The St. Lawrence, 1 Black [66 U. S.] 532; Andrews v. Wall, 3 How. [44 U. S.] 573; Ramsey v. Allegre, 12 Wheat. [25 U. S.] 611; and The Eclipse [Case No. 4,268],—where a promissory note has been given for a claim, which is also a lien, and the maker of the note insists upon the objection, undoubtedly the court should require the note to be surrendered before the lien is enforced, for otherwise the maker might be compelled to pay it again to the innocent holder. But I apprehend this rule does not apply where the security given is collateral, and the objection is not taken by the owner or the person who gives the security. It is entirely immaterial, so far as this mortgagee is concerned, whether this security be surrendered or not; he cannot be prejudiced by its remaining outstanding, and I think he has no right to insist upon its cancellation.

The claim of Edward Mayes accrued shortly before the mortgage was given. The answer of the mortgagee denies notice of it, and this is conceded by libelant. It is insisted, however, that the claim has not become stale as against the mortgagee, inasmuch as it had not become stale when the mortgage was given, and there having been no change in the relative situation of the parties up to the time of filing the libel, the mortgagee has not been injured by the delay. The argument proceeds upon the very ingenious theory that courts pronounce claims stale solely upon the principle of estoppel. If A. unreasonably sleeps upon his rights; if he is silent when he ought to speak; if he is inactive when he ought to do something to assert his rights, and thereby B. is induced to act as if no such right existed, and in ignorance of it, A. is estopped to assert his rights to the prejudice or injury of B. If that position is correct, then it follows irresistibly that the laches or neglect of the lien-holder must have occurred before the rights of the party claiming the estoppel have become fixed; in other words, if the claim is not stale by reason of the lien-holder's delay, at the time the mortgagee acquires his rights, no subsequent delay can make it stale. There is certainly much to be said in support of this theory. I had occasion myself to urge the same argument in the case of The Detroit [Case No. 3,832]. In this case a claim for towage accrued in May and June, 1865, while the vessel was in the hands of a person who had contracted to purchase her. Having failed to fulfill his contract, she was returned to the owner, who took her to Canada within a month or two after the services were rendered, where she remained until June 27th of the following year. She was then resold to a bona fide purchaser, without notice, who at once brought her within the jurisdiction of the court and kept her during the remainder of the summer. On October 6th a libel was filed and the vessel attached. It was strongly insisted upon the argument, page 142, that so far as that question was concerned, the case stood precisely as if the libel had been filed on the day she was brought over from Canada, as no change of circumstances took place from that time to the day of filing the libel. Without passing directly upon the question, the court observed that "the libelant was bound to know when she was brought over, as he could have learned it by observation or inquiry; yet he allowed the months of July, August and September to elapse without taking a step to enforce his claim. I think it was incumbent upon libelant to keep a careful watch upon her movements, to notify the purchaser of his claim as soon as she was sold, and to proceed to enforce his lien as soon as she was brought within the jurisdiction of the court. He was bound to know that this vessel was as likely to change

hands as any other, and should have used due diligence to ascertain when she was transferred to Alger, and to have given him speedy notice of his claim, in order that he might lose no opportunity of protecting himself against it. Instead of this, he allowed the three busiest months of the season to elapse without making known its existence. I think these facts warrant the presumption that the lien was waived." These remarks furnish a very strong inference that the learned justice did not consider the position a sound one, as he seems to have taken it for granted the claim would not have been stale if libelant had attached the vessel the moment she was brought over from Canada, but that his lien was waived by the subsequent delay of three months.

It is apparently conceded in the argument in this case that if, in the meantime, the mortgagee had given up any securities, or had been in any way placed in a worse position, this might be a complete answer, but that the burden of proving this was upon him. It might not always be easy to prove this; for example, suppose a vessel worth twenty thousand dollars incumbered, first by the claim of a material man to the extent of ten thousand dollars, and secondly, by a mortgage of the same amount put upon her a month afterwards. By arrangement between the material man and the owner the credit is extended, and the lien kept alive for five years; and although no positive change of circumstances may have taken place, except such as are inherent in the property, and which might be difficult to prove, the vessel has gradually depreciated to one-half its former value, perhaps the mortgagee may have postponed a foreclosure upon the very theory that, although the property was greatly depreciated, older claims had been paid off, and thus his security kept up to its full value; yet it might be very difficult to prove that such depreciation had taken place. In the case under consideration, in all probability the schooner has depreciated more than the amount of Mayes' bill, so that the mortgagee is in fact a loser by his failure to enforce it at the opening of navigation, and yet it would be utterly impossible to show such depreciation in dollars and cents. In the case of The Hercules [Case No. 6,400] it was held by this court that where a claim accrued in the summer, and the vessel changed hands the following January, the claim should be enforced as soon as possible after the opening of navigation, and the libel, being filed in September, the claim was held to be stale, although it did not appear distinctly or clearly that the purchaser had been injured by any delay occurring after the first of June. I think he may rest upon the assurance that tacit liens must be enforced during the current season, or as soon as possible after the commencement of the next season, and is not bound

to show that he has actually suffered injury by a delay after that time. His position seems analogous to that of an indorser. The question of injury might be a very delicate one, and might impose upon him a burden which he ought not to be obliged to assume. For these reasons, I deem it safer to adhere to the generally received doctrine upon the subject of stale claims—that as against innocent parties they must be promptly enforced. Within this ruling the libel of Mayes has become stale as against the mortgagee.

For the same reason the claim of Smith has also become stale. So far as the case of the insurance company is concerned, it is practically determined by the ruling in the case of The Dolphin [Cases Nos. 3,973, 3,974].